THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
*v.* INTERNATIONAL BRIDGE COMPANY, Appellant.

**Constitutional law — the act of the Legislature (L. 1915, ch. 666) requiring the International Bridge Company to erect roadways for pedestrians and vehicles on its bridge across the Niagara river, and imposing penalties if it failed to comply with the requirement, is a valid and constitutional enactment.**

The act incorporating the International Bridge Company, the defendant herein (L. 1857, ch. 753), and authorizing it to build a railroad bridge across Black Rock harbor in the Niagara river, from land in the state of New York to Squaw island in the river, contained a provision that the bridge *might* be built as well for the passage of persons on foot as for the passage of railroad trains. About the same time the Canadian government passed a similar act incorporating a company by the same name and for the same purposes but containing a provision that the bridge when constructed " *shall* be as well for the passage of persons on foot and in carriages and otherwise as for the passage of railroad trains." Afterward, and before any bridge was built, the two corporations were consolidated by an act of the legislature of this state (L. 1869, ch. 550) with " all the rights, privileges and franchises, and subject to all the disabilities and duties of each of such corporations so consolidated," and this charter was confirmed by Congress. Thereafter the defendant company constructed a bridge across the Niagara river opposite Buffalo, but no provision was then nor has since been made for vehicles or foot passengers. Thereafter the United States government acquired from the state all its right and title to the lands and waterways for contemplated improvements, including those over which the bridge was erected. In 1915 the legislature passed an act (L. 1915, ch. 666) which amended the act incorporating the defendant company (L. 1857, ch. 753) and provided that a roadway for vehicles and a pathway for pedestrians should be erected on the bridge in question between Squaw island and the mainland of the state, to be ready for use by January 1, 1916, and if not then erected that the defendant or its successor should be liable to a penalty of fifty dollars a day for each day it remained in default. The roadway and pathway were not built and this action was brought to recover penalties imposed by the act.

*Held, first,* that the act of 1915 is constitutional, that it does not violate a provision of a contract — the charter granted in 1857 —

by imposing additional burdens and obligations upon the defendant. Tne Canadian act provided that "said bridge *shall* be constructed as well for the passage of persons on foot and in carriages and otherwise as for the passage of railroad trains," and, hence, when the two corporations were consolidated with their consent and the consent of the state, the defendant became obligated to construct a bridge for railroad trains, foot passengers and vehicles.

*Second,* that the grant to the Federal government did not give to the United States any other or greater power of control than it otherwise had on the bridge. The statute affects only so much of the bridge as lies within the state of New York, and the authority of the state over it is plenary, subject only to such action as Congress may take in execution of its power under the Constitution to regulate commerce among the several states.

*Third,* that upon the facts found below the contention that the act is confiscatory and deprives defendant of its property without due process of law is untenable. (*Escanaba Co.* v. *Chicago,* 107 U. S. 678; *Cummings* v. *Chicago,* 188 U. S. 410, followed.)

*People* v. *International Bridge Co.,* 179 App. Div. 950, affirmed.

(Argued February 13, 1918; decided March 12, 1918.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered July 7, 1917, affirming a judgment in favor of plaintiff entered upon a decision of the court at a Trial Term without a jury.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Adelbert Moot, William L. Marcy* and *Helen Z. M. Rodgers* for appellant. So far as the state of New York has jurisdiction over the subject-matter, the special franchise granted in 1857 is inviolable, and the state cannot modify that franchise so as to impose additional burdens and obligations on the corporation. (*I. T. & S. Bank* v. *Doud,* 105 Fed. Rep. 123; *Attorney-General* v. *Inter. Bridge Co.,* 6 Ont. App. 537; *Union Pacific Co.* v. *Mason City Co.,* 199 U. S. 160; *Railroad Companies* v. *Schutte,* 103 U. S. 119; *Trustees of Southampton* v.

*Jessup,* 162 N. Y. 122; *Ghee* v. *Northern U. G. & Co.,* 158 N. Y. 510; *Skaneateles Water Works Co.* v. *Village of Skaneateles,* 161 N. Y. 154; *Ives* v. *South Buffalo Railway Co.,* 201 N. Y. 271; *People* v. *O'Brien,* 111 N. Y. 1; *S. R. T. Co.* v. *Mayor, etc.,* 128 N. Y. 510; *Coney Island R. R. Co.* v. *Kennedy,* 15 App. Div. 588.) The act in question is confiscatory and deprives defendant of its property without due process of law. (*Willcox* v. *Consolidated Gas Co.,* 212 U. S. 19; *Missouri Pacific Ry. Co.* v. *Nebraska,* 207 U. S. 196; *San Diego Land & Town Co.* v. *National City,* 174 U. S. 739; *San Diego Land & Town Co.* v. *Jasper,* 189 U. S. 442.) Under the commerce clause of the Constitution and the acts of Congress, both general and special, enacted under its authority, the Federal jurisdiction over the International bridge is exclusive, and precludes any legislative interference by the state of New York. (*Wisconsin* v. *Duluth,* 96 U. S. 379; *C., R. I. & P. Ry. Co.* v. *Hardwick Elevator Co.,* 226 U. S. 426; *C. S. Ry. Co.* v. *Inter. Bridge Co.,* 8 Fed. Rep. 190; *Green Bay Co.* v. *Patton Paper Co.,* 172 U. S. 58; *Philadelphia Co.* v. *Stinson,* 223 U. S. 605; *Greenleaf Lumber Co.* v. *Garrison,* 237 U. S. 251; *C. & W. C. Ry. Co.* v. *Varnville Furniture Co.,* 237 U. S. 597; *E. R. R. Co.* v. *New York,* 223 U. S. 671; *N. P. R. R. Co.* v. *Washington,* 222 U. S. 370.)

*Merton E. Lewis,* Attorney-General (*James S. Y. Ivins* and *Ralph A. Kellogg* of counsel), for respondent. Chapter 666 of the Laws of 1915 does not impair the obligation of contracts, its sole purpose and effect being to enforce the only contracts involved. (*A. C. Line* v. *N. C. C. Co.,* 206 U. S. 1; *M. P. R. R. Co.* v. *Kansas,* 216 U. S. 262; *C. & O. Ry. Co.* v. *P. S. Com.,* 242 U. S. 603; *Jefferson College* v. *Washington College,* 13 Wall. 190; *Miller* v. *New York,* 15 Wall. 478; *Hamilton Gas Light & Coke Co.* v. *Hamilton,* 146 U. S. 258; *Sioux City*

*S. R. Co.* v. *Sioux City*, 138 U. S. 98; *Holyoke Water Co.* v. *Lyman*, 15 Wall. 500; *Louisville Water Co.* v. *Clark*, 143 U. S. 1; *Erie R. R. Co.* v. *Williams*, 233 U. S. 700; *Ramapo Water Co.* v. *City of New York*, 236 U. S. 579; *Calder* v. *Michigan*, 218 U. S. 591; *N. Y. & N. E. R. R. Co.* v. *Bristol*, 151 U. S. 556; *Fair Haven & W. R. Co.* v. *New Haven*, 203 U. S. 379; *Noble State Bank* v. *Haskell*, 219 U. S. 104.)   The statute is a proper and reasonable exercise of the state's police power and does not contravene either the Federal or State Constitution.   (*Noble State Bank* v. *Haskell*, 219 U. S. 104; *Clark* v. *Nash*, 198 U. S. 361; *Strickley* v. *Highland Boy Mining Co.*, 200 U. S. 527; *Offield* v. *N. Y., N. H. & H. R. Co.*, 203 U. S. 372; *Bacon* v. *Walker*, 204 U. S. 311; *C., B. & Q. R. R.* v. *Drainage Com.*, 200 U. S. 561; *Mo. Pac. R. Co.* v. *City of Omaha*, 235 U. S. 121; *Erie R. R. Co.* v. *Williams*, 233 U. S. 700; *N. Y. & N. E. R. Co.* v. *Bristol*, 151 U. S. 556; *Wisconsin, etc., R. Co.* v. *Jacobson*, 179 U. S. 287; *Balt. & Ohio R. Co.* v. *I. C. C.*, 221 U. S. 612.)   The state's police power extends over the instruments of interstate and foreign commerce precisely as it does over any other activity within its borders, except where it directly conflicts with a definite and positive exercise by the Federal government of the supreme control which the Constitution confers upon Congress.   (*Cummings* v. *Chicago*, 188 U. S. 410; *Lake Shore & M. S. Ry.* v. *Ohio*, 165 U. S. 365; *Escanaba Company* v. *Chicago*, 107 U. S. 678; *West Chicago Street R. Co.* v. *Illinois*, 201 U. S. 506; *Canada Atlantic Co.* v. *Chicago*, 210 Fed. Rep. 7.)

MCLAUGHLIN, J.   This action was brought to recover penalties aggregating $500, alleged to have been incurred by defendant's failure to construct, before January 1, 1916, as required by chapter 666 of the Laws of 1915, a roadway for vehicles and a pathway for pedestrians

upon its bridge across Black Rock harbor from land in the state of New York to Squaw island in the Niagara river. The answer admitted the failure to construct such ways but denied that defendant was liable for the penalties alleged. It also set up affirmative defenses to the effect that the act of 1915 was unconstitutional and void. At the trial the plaintiff had a judgment for the amount claimed, which was unanimously affirmed by the Appellate Division, and defendant appeals to this court.

The defendant is a New York corporation. By chapter 753 of the Laws of 1857 a corporation by the same name was formed for the purpose of constructing a bridge across the Niagara river near the city of Buffalo, and a provision was inserted in the act to the effect that the bridge might be built as well for the passage of persons on foot and in carriages as for the passage of railroad trains. About the same time the Canadian government passed a somewhat similar act (20 Victoria, chap. 227) incorporating a company by the same name and for the same purposes. That act also contained a provision to the effect that the bridge, when constructed, " shall be as well for the passage of persons on foot and in carriages and otherwise as for the passage of railroad trains." In 1869 these two corporations were consolidated by an act of the legislature of the state of New York with " all the rights, privileges and franchises, and subject to all the disabilities and duties of each of such corporations so consolidated." (Laws of 1869, chap. 550, section 6.) The charter thus obtained by defendant was confirmed by the Congress of the United States. (Laws of 1870, chap. 176.) Thereafter, and between 1870 and 1874, defendant constructed a bridge across the Niagara river opposite the city of Buffalo, but no provision was made for vehicles or foot passengers thereon. In 1899, or some time prior thereto, defendant submitted a plan for approval to the secretary of war of the United States

for the reconstruction of the bridge. Such plan was approved and showed upon either side of the proposed reconstructed bridge a passageway for pedestrians and vehicles. The bridge was reconstructed according to the plan, except no passageway for pedestrians or vehicles was provided. Some time thereafter the United States government, with a view of obtaining a suitable channel for deep water craft around the rocks and shoals at the head of the Niagara river, acquired from the state of New York (Laws of 1904, chap. 373) all its right and title to the lands and waterways necessary for the contemplated improvement, including the land under the water of Black Rock harbor and that portion of the Erie canal adjacent thereto. In 1907 the secretary of war gave notice to the defendant that its bridge over Black Rock harbor and the Erie canal was an unreasonable obstruction to navigation, and that the same must be removed and a new one constructed according to certain requirements specified. Pursuant to this notice defendant submitted a plan for the rebuilding of the bridge to the secretary of war, who approved the same. This plan showed on either side, by dotted lines, a way for pedestrians and vehicles, and contained a statement that " roadways shown in dotted lines not to be put in at present but provision is made in the design of the bridge for their future construction." The bridge was reconstructed in pursuance of this plan but the roadways were not then and have not since been built.

In 1915 the legislature of this state passed the act before referred to, under which the penalties stated have been recovered. The first section of the act provides that chapter 753 of the Laws of 1857, entitled " An Act to incorporate the International Bridge Company " is hereby amended by adding thereto a new section, to be known as section 15-a. This new section provides in substance that a roadway for vehicles and a pathway for

pedestrians shall be constructed upon the draw across Black Rock harbor between Squaw island and the mainland of New York state and be ready for use by January 1, 1916, and if defendant or its successor in interest did not complete the same on or before that time, then it or its successor should be liable to a penalty of fifty dollars for each day it remained in default, the same to be sued for and collected by the attorney-general of the state. The act also contains a provision to the effect that after the ways have been completed, tolls might be required to be paid by persons using them. The roadway and pathway were not built and this action followed with the result before stated.

The validity of the judgment which has been recovered is attacked principally upon three grounds, which will hereafter be considered in the order named:

(a) That the act of 1915 is unconstitutional in that it violates the provision of a contract — the charter granted in 1857 — by imposing additional burdens and obligations upon the defendant.

(b) That the Federal government has taken exclusive control of the bridge, or at least to such an extent as to prevent the state of New York legislating in any way with reference thereto.

(c) That the act of 1915 is confiscatory and deprives the defendant of its property rights without due process of law.

1. The International Bridge Company, by the act of 1857, obtained from the state of New York the right to build a bridge over land in New York to the center of the Niagara river. It may well be doubted whether, in view of the language used in the act, the bridge company were obligated, if it built a bridge, to provide a way for carriages and pedestrians. The state, of course, in granting the charter, reserved to itself the right to amend it at any time, but this reservation did not authorize the

state, the charter having been accepted and acted upon to the extent that it had ripened into property rights, to deprive defendant of the benefits thus obtained without compensation. (*Monongahela Navigation Co.* v. *United States*, 148 U. S. 312; *People* v. *O'Brien*, 111 N. Y. 1.) Nor could the state impair the value of the franchise by imposing additional burdens without paying for it. (*Trustees of Southampton* v. *Jessup*, 162 N. Y. 122.) Does the act of 1915 deprive this defendant of any rights which it obtained by the act of 1857 or impose upon it burdens not thereby imposed? I think not. Defendant did not construct a bridge under that act. The bridge which was constructed was built after the corporations formed by the act of 1857 and the Canadian act had been consolidated into the present corporation by chapter 550 of the Laws of 1869. If it be assumed the act of 1857 did not impose an obligation upon the defendant to build ways for pedestrians and vehicles, the Canadian act certainly did. The language of that act was: " Said bridge *shall* be constructed as well for the passage of persons on foot and in carriages and otherwise as for the passage of railroad trains." When the two corporations, therefore, were consolidated, with their consent and the consent of the state of New York, the defendant became obligated to construct a bridge for railroad trains, foot passengers and vehicles. The charter thus given by the consolidating act was accepted subject to whatever duties were imposed upon either or both of the old corporations. The bridge, as we have seen, was built under the consolidating act, but provision was made only for railroad trains. It had by the acceptance of the charter obligated itself to build one also for pedestrians and vehicles. Compelling it to keep its implied agreement to do what the charter required does not impair the obligation of the contract or impose additional burdens. In my opinion the act of 1915 is a valid legislative enactment.

2. After the consolidation took place the defendant had the right to build the bridge. The state of New York, however, had the title to, and governmental control of, the land under the waters of the river. This control, nevertheless, was subject to the supervision of the United States in so far as commerce was concerned, but this supervision did not give to the United States government, as against the state of New York, authority to construct a bridge, nor could it take the state's property in the bed of the river for that purpose any more than it could take property elsewhere without condemnation and payment. It could give its consent to the construction of a bridge upon such terms as it saw fit and even after the bridge was built, if it interfered with commerce, could withdraw its consent and compel its removal. It did consent that defendant construct piers for the bridge on property of the state and the bridge, with the consent of the state, was built on such property. No way was provided for pedestrians or vehicles. It was built primarily for interstate and foreign commerce, but this did not give the United States any other or greater supervision over it than it otherwise had. It could simply regulate its use for interstate and foreign commerce. This did not subject the defendant to the control of the United States government in any other respect. It still remained a New York corporation which state had the power to regulate within its limits matters of internal police, including in that general designation " whatever would promote the peace, comfort, convenience and prosperity of its people." This power included among other things the construction of bridges within its territory. It is only so much of the bridge which is here being considered as lies entirely within the state of New York, and while it gave the right, in the first instance, to construct the bridge, it retained the right, in the interest of the people of the state, to supervise and direct how

it should be used, subject only to the Federal government's regulations so far as such use might relate to interstate and foreign commerce. The relation thus existing between the parties was not, in my opinion, changed by the fact that the state of New York ceded to the United States the land under the waters of the Niagara river, including a portion of the Erie canal adjacent to Black Rock harbor. At the time the grant was made the bridge had been built. It rested on piers in the river. The grant, of course, was subject to visible rights then existing and theretofore obtained. These rights could not be destroyed by a grant from the state to the United States. As before indicated, the United States could, before acquiring the grant, have compelled the defendant to remove the bridge. It could have done this just as well before the grant was made as it could afterwards. The power to do this existed independent of the grant and in no way depended upon it. It was one which the Federal government inherently possessed for the purpose of controlling interstate and foreign commerce. (*Escanaba Co.* v. *Chicago,* 107 U. S. 678; *Cummings* v. *Chicago,* 188 U. S. 410.)

In the *Escanaba* case the question was as to the validity of the regulations made by the city of Chicago in reference to the closing, between certain hours of each day, of bridges across the Chicago river. Those regulations were alleged to be inconsistent with the power of Congress over interstate commerce. The court brushed aside such contention, saying: " The Chicago river and its branches must, therefore, be deemed navigable waters of the United States, over which Congress under its commercial power may exercise control to the extent necessary to protect, preserve, and improve their free navigation. But the States have full power to regulate within their limits matters of internal police, including in that general designation whatever will promote the peace,

comfort, convenience, and prosperity of their people. This power embraces the construction of roads, canals, and bridges, and the establishment of ferries  *  *  *. And nowhere could the power to control the bridges in that city, their construction, form, and strength, and the size of their draws, and the manner and times of using them, be better vested than with the State, or the authorities of the city upon whom it has devolved that duty. When its power is exercised, so as to unnecessarily obstruct the navigation of the river or its branches, Congress may interfere and remove the obstruction.  *  *  * But until Congress acts on the subject, the power of the State over bridges across its navigable streams is plenary." (p. 683.)

The case now before us, so far as the contention is made that the Federal government has assumed exclusive control of the bridge, is governed, as it seems to me, by *Cummings* v. *Chicago* (*supra*) and the authorities there cited. In that case the Calumet river was improved by the Federal government, but before such improvements were made the government required a conveyance to be made to it by owners of the land fronting on the river. With the consent of the secretary of war the plaintiffs commenced to build a dock in the river adjacent to their property, without obtaining a permit from the department of public works of the city of Chicago, as required by an ordinance, and the court held that they were subject to the ordinance and before the dock could be built had to obtain the city's consent. Mr. Justice HARLAN, delivering the opinion of the court (and what he said is equally applicable to the question here presented) said: " The general proposition upon which the plaintiffs base their right to relief is that the United States, by the acts of Congress referred to and by what has been done under those acts, has taken ' possession ' of the Calumet river, and so far as the erection in that

river of structures such as bridges, docks, piers and the like is concerned, no jurisdiction or authority whatever remains with the local authorities. In a sense, but only in a limited sense, the United States has taken possession of Calumet river, by improving it, by causing it to be surveyed, and by establishing lines beyond which no dock or other structure shall be erected in the river without the approval or consent of the secretary of war, to whom has been committed the determination of such questions. But Congress has not passed any act under which parties, having simply the consent of the secretary, may erect structures in Calumet river without reference to the wishes of the state of Illinois on the subject. * * * Calumet river, it must be remembered, is entirely within the limits of Illinois, and the authority of the State over it is plenary, subject only to such action as Congress may take in execution of its power under the Constitution to regulate commerce among the several States. That authority has been exercised by the State ever since it was admitted into the Union upon an equal footing with the original States. * * * The effect of that act, reasonably interpreted, is to make the erection of a structure in a navigable river, within the limits of a State, depend upon the concurrent or joint assent of both the National Government and the state government. The secretary of war, acting under the authority conferred by Congress, may assent to the erection by private parties of such a structure. Without such assent the structure cannot be erected by them. But under existing legislation they must, before proceeding under such an authority, obtain also the assent of the State acting by its constituted agencies." (p. 426.)

3. As to the contention that the act of 1915 is confiscatory and deprives defendant of its property without due process of law, but little need be said. The trial

court found as a fact, and the finding has been unanimously affirmed by the Appellate Division, that " the. probable cost of constructing the roadway and foot-path required by chapter 666 of the Laws of 1915, is insignificant in comparison to the assets and annual net earnings of the defendant." It also found, and this finding was also unanimously affirmed, that " there is no evidence in the record showing that the investment required by chapter 666 of the Laws of 1915 would not yield a reasonable return to the defendant." These findings, as it seems to me, are fatal to the appellant's claim. If the investment necessary for the construction of roadways would not enable defendant to earn a fair return upon its investment then it was incumbent upon it to establish that fact. (*Willcox* v. *Consolidated Gas Co.,* 212 U. S. 19; *Missouri Pacific Ry. Co.* v. *Kansas,* 216 U. S. 262.) The court cannot assume, in the absence of such proof, that the act is confiscatory or that it in any way interferes with rights possessed by defendant.

In my opinion the judgment is right and should be affirmed, with costs.

HISCOCK, Ch. J., CHASE, POUND, CRANE and ANDREWS, JJ., concur; HOGAN, J., concurs in result.

. Judgment affirmed.