THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.*
THE HUDSON RIVER CONNECTING RAILROAD CORPORA-
TION, Defendant.

(Supreme Court, Albany Special Term, June, 1918.)

Constitutional law — congress has paramount authority under the
commerce clause of the Constitution over all navigable waters of
the United States — the state cannot overrule the acts of congress
and the determination of the secretary of war authorizing the
erection of a bridge over the Hudson river — bridges — injunctions
— pleading — navigable waters — railroads — U. S. Const. art. I,
§ 8(3) — 34 U. S. Stat. at L. 84 — Laws 1913, chap. 388; Laws 1917,
chap. 713 — Railroad Law, § 8(3), as amended by Laws 1918, chap.
166.

Congress under the constitutional power to regulate com-
merce with foreign nations and among the states has the para-
mount right to regulate such commerce over highways, railroads
and bridges as well as upon navigable waters.

The Hudson river in part forms the boundary line between
the state of New York and the state of New Jersey and with
the enlarged Erie canal forms a navigable waterway for com-
merce to Canada and to several western states.

By an act of congress approved March 13, 1914, the defend-
ant, a railroad corporation organized under the laws of
the state of New York, was granted authority to con-
struct, maintain and operate a bridge, together with necessary
approaches thereto, across the Hudson river at a point suitable
to the interests of navigation between Castleton and Schodack
Landing, in accordance with the provisions of the act of con-
gress (34 U. S. Stat. at L. 84) approved March 23, 1906,
entitled "An act to regulate the construction of bridges over
navigable waters." Modified plans were duly approved by
the secretary of war and the chief engineer of the United
States army and the secretary of war permitted the building
of the bridge under the regulations and conditions named
in his certificate. Under and in reliance upon a statute (Laws
of New York, 1913, chap. 388), by which defendant was
authorized to construct upon its line of railroad a bridge for

railroad purposes only across the Hudson river between Castleton and Schodack Landing, together with necessary viaducts and approaches, and to maintain and operate the same, defendant expended large sums - of money in providing plans for such bridge and securing necessary rights of way and in erecting the bridge according to the plans approved by the secretary of war prior to June 1, 1917, as prescribed by the statute of 1913. By chapter 713 of the Laws of 1917 the statute of 1913 was repealed, the new act providing that, instead of the bridge authorized by the act so repealed, the defendant might build a bridge having the same clearance above the mean level of the river and having but a single span across the river with no piers or abutments between the dykes; that the number and form of abutments for viaducts and approaches leading up to the dykes should be first approved by the state engineer and surveyor, and that all plans for such bridge should be subject to the approval of the secretary of war. Section 8(3) of the Railroad Law, as amended by chapter 166 of the Laws of 1918, provides, in substance, that no railroad corporation whose proposed railroad includes a bridge across the Hudson river shall construct any bridge until after the plans for the same shall have been submitted to and approved by the state engineer and surveyor and the state superintendent of public works and that neither of such officers shall approve any plan for any such bridge which shall provide for more than a single span across the Hudson river between the present dyke lines and providing that any railroad corporation which shall construct any such bridge except in accordance with this act shall be restrained and enjoined from proceeding with such construction in an action to be brought for that purpose by the attorney-general and in addition thereto shall forfeit its charter.

In an action brought to restrain the defendant from constructing a bridge across said river, other than one with a single span with no piers or abutments between the dykes and with a clearance of not less than 135 feet above the mean level of the river, upon a claim that the erection of a bridge with piers in the bed of the river resting upon lands under water belonging to the state would be a trespass upon such lands, and a public nuisance, *held,* overruling a demurrer to affirmative defenses alleging that the determination of the secretary of war was and is a determination by federal authority that the bridge

is a lawful structure and that the state of New York is without power to prescribe any other or different structure, that the acts of congress and determination of the secretary of war pursuant thereto are controlling as to the kind of bridge the defendant may construct and that state legislation prescribing a different kind cannot be effective to overrule federal authority.

DEMURRER to affirmative defenses.

Merton E. Lewis, Attorney-General (Sanford W. Smith, Claude T. Dawes, William E. Woollard, Deputies Attorney-General), for plaintiff.

Visscher, Whalen & Austin (Alexander S. Lyman, of counsel), for the defendant.

CHESTER, J.  This action is brought to restrain the defendant from constructing a bridge across the Hudson river, other than a bridge with a single span with no piers or abutments between the dykes and with a clearance of not less than 135 feet above the mean level of the river, the claim on the part of the plaintiff being that the erection by the defendant of a bridge across such river with piers in the bed of the river resting upon lands under water belonging to the state will be a trespass upon such lands, and a public nuisance.  The defendant has interposed an answer to the complaint containing denials of many of the allegations therein contained and also alleging two separate defenses.  These defenses have each been demurred to by the plaintiff as being insufficient in law upon the face thereof.  The sufficiency of these defenses may be considered together for substantially the same questions are presented with respect to each of them.  For the purposes of the demurrer the allegations contained in each must be taken as true.  *Douglas* v. *Coonley,* 156 N. Y. 521.

From these allegations the facts hereinafter stated appear.  The defendant was duly organized as a railroad corporation in the year 1913 under the laws of New York for the construction of a railroad about twenty-two miles in length, extending from a point of connection with the West Shore railroad near Feura Bush, on the west side of the Hudson river in Albany county easterly and southerly to two points of connection on the east side of the Hudson river, one of which is on the Hudson division of the New York Central railroad near Stuyvesant, in Columbia county, and the other is on the Boston and Albany railroad near Post road, in Rensselaer county.  The New York Central Railroad Company owns all of the outstanding capital stock of the defendant and is the lessee and operates both the Boston and Albany railroad and the West Shore railroad.  The proposed new railroad of the defendant includes as an indispensable part thereof a bridge to be constructed across the Hudson river between a point, southerly of Castleton, in Columbia county on the east side of the river, and a point southerly of Selkirk in Albany county, on the westerly side of the river, together with the approaches thereto, and the object of such construction is the operation over such bridge and approaches of trains for transportation of persons and property between points in the states of New York and Massachusetts and points in other states of the United States and Canada and to effect the connection of said railroads in such manner as to avoid the long and steep grades which otherwise are encountered and traversed by trains in and around the city of Albany, and to relieve congestion which now is and otherwise will continue to be burdensome in the operation of trains through and in the vicinity of Albany by reason of the physical condi-

tions prevailing in that locality. The operation of trains over such bridge will greatly reduce the cost of operation of trains and also the running time thereof.

The waters of the Hudson river are navigable from the city of New York to and above the city of Troy, including the waters at and in the vicinity of the proposed site of defendant's bridge, and along a considerable portion of its course the said river constitutes and is the boundary between the states of New York and New Jersey. The waters of said river at and in the vicinity of the proposed site of such bridge and northerly and southerly therefrom are navigable waters under the paramount jurisdiction of the United States and whatever title to the bed of such river at and in the vicinity of the site of the said bridge in the state of New York, the defendant alleges, is subordinate and subject to the paramount right and authority of the United States conferred by the Federal Constitution, in the power to regulate commerce between the states and with foreign countries, to authorize, regulate and provide for the erection of structures both for the regulation and improvement of navigation of said river and as instrumentalities of interstate commerce as the congress of the United States may see fit to authorize and require.

By chapter 388 of the Laws of New York of 1913, which became a law with the approval of the governor on April twenty-eighth of that year, the defendant was authorized to construct upon the line of its railroad a bridge for railroad purposes only across the Hudson river between Castleton and Schodack Landing together with the necessary viaducts and approaches and to maintain and operate the same. Said law prescribed that such bridge shall have a

clearance of not less than 135 feet above the mean level of the Hudson river and between upper Schodack island and Shad island, that the span of said bridge shall be not less than 300 feet in length in the clear from pier to pier; that the plans for said bridge shall be subject to the approval of the secretary of war and that the construction of said bridge shall be commenced on or before the 1st day of May, 1914, and be completed within five years thereafter.

In reliance upon such law of New York the defendant alleges that it has expended upwards of $380,000 in providing plans for such bridge, in securing necessary rights of way, and in erecting such bridge according to plans approved by the secretary of war prior to June 1, 1917.

There was enacted by congress an act which was approved by the president on March 13, 1914, under which authority was granted to the defendant " to construct, maintain and operate a bridge together with the necessary approaches thereto across the Hudson river, at a point suitable to the interests of navigation, between Castleton and Schodack Landing, in accordance with the provisions of the act entitled ' an act to regulate the construction of bridges over navigable waters ' approved March 23, 1906. " The last named act prescribed that the construction of a bridge authorized by congress over navigable waters shall be commenced within one year and completed within three years from the date of the passage of the act authorizing such construction. Subsequently by an act of congress approved August 9, 1916, the time for the commencement and completion of defendant's proposed bridge was extended to March 30, 1918, as to commencement and to March 30, 1920, as to the completion thereof. Pursuant to the acts of congress, the

defendant filed with the war department of the United States plans for the said bridge and thereupon made application to the secretary of war for the approval thereof and the defendant subsequently in lieu of the plans previously filed for the construction of such bridge and after public hearings before the engineering officer of the war department filed revised plans providing for a span of 600 feet from the center of the most westerly pier to the center of the middle pier and a span of 405 feet from the center of the middle pier to the center of the easterly pier of said bridge, the present excavated channel being wholly within the limits of the longer span. Thereafter said revised plans, with a recommendation for the approval thereof, were submitted to the secretary of war by the engineering officer, and by the chief of engineers of the department of war, whereupon the secretary of war held a public hearing on the question of his approval thereof. On such hearing various parties appeared in protest and objection claiming that said proposed bridge would be a menace to navigation and likely to increase the severity of ice gorges and the flooding incidental thereto, but after due consideration of such objections, on May 2, 1917, the secretary of war duly made and filed his certificate pursuant to the acts of congress approving the said revised plans and permitting the building of said bridge under certain regulations and conditions named in the certificate.

The defendant claims and alleges in its answer that such determination of the secretary of war was and is a determination by federal authority that said bridge is a lawful structure and puts it beyond the power of the state of New York acting through its legislature or otherwise to prescribe any other or different bridge structure.

It appears, nevertheless, that the legislature of New York passed an act approved by the governor on the 1st day of June, 1917 (Laws of 1917, chap. 713), to repeal chapter 388 of the Laws of 1913, and provided in such new law that instead of the bridge authorized by the act so repealed the defendant might build a bridge having the same clearance above the mean level of the river and having but a single span across the river with no piers or abutments between the dykes; that the number and form of abutments for viaducts and approaches leading up to the dykes shall be first approved by the state engineer and surveyor, and that all plans for such bridge shall be subject to the approval of the secretary of war.

The legislature of New York by chapter 166 of the Laws of 1918, approved by the governor on April ninth of that year, amended subdivision 3 of section 8 of the Railroad Law (Laws of 1910, chap. 481), providing in substance that no railroad corporation whose proposed railroad includes a bridge across the Hudson river shall construct any such bridge until after the plans for the same shall have been submitted to and approved by the state engineer and surveyor and the state superintendent of public works and that neither of such officers shall approve any plan for any such bridge which shall provide for more than a single span across the Hudson river between the present dyke lines and providing that any railroad corporation which shall construct any such railroad except in accordance with this act shall be restrained and enjoined from proceeding with such construction in an action to be brought for that purpose by the attorney-general and in addition thereto shall forfeit its charter.

The defendant insists that these several laws of the state of New York are unconstitutional and void for

reasons stated at length in the answer, and that the federal authorization of the bridge in accordance with plans approved by the secretary of war pursuan⁺ to the act of congress is paramount and exclusive of any attempted regulation of the subject by the state. The plaintiff on the other hand insists that the laws of New York referred to are effectual to prevent the construction of any bridge by the defendant at the place in question except in conformity with such laws, or, in other words, that before the defendant can erect any bridge across the Hudson river it must have first received the authority of the state and also the consenting authority of congress.

The argument of the plaintiff in short as stated in a single paragraph of the very elaborate brief of its counsel, is that " a railroad bridge, both ends of which are within the limits of a single state, which is not a part of an interstate railroad authorized by congress, but is a part of a railroad whose full length and all termini are within one state, whose construction has been authorized exclusively by the laws of that state, and which is to be constructed by a corporation incorporated solely under the laws of that state, is not an interstate bridge or an interstate highway, and full jurisdiction and power with respect to its creation and construction lies with the state, subject only to the limitation that, if the bridge is to cross navigable waters, congress, in the exercise of its control over interstate commerce by water, may forbid its construction, except in accordance with plans which it or some authority delegated by it shall approve."

This argument overlooks the fact that congress, under the constitutional power to regulate commerce with foreign nations and among the states, has the paramount right to regulate such commerce over high-

Supreme Court, June, 1918.          [Vol. 104.

ways, railroads and bridges as well as upon navigable waters (*Covington & Cincinnati Bridge Co.* v. *Kentucky,* 154 U. S. 204); that the Hudson river in part forms the boundary line between two states, and with the enlarged Erie canal forms a navigable waterway for commerce to Canada and to several western states, and that the defendant's proposed bridge is a *connecting* link from the east to the west which will carry commerce from and to foreign countries and between the states.

It will be seen by the recital of facts hereinbefore given that both the state legislature and congress have passed laws on the subject of the proposed bridge and that if full force and effect is to be given to chapter 713 of 1917 and chapter 166 of 1918, Laws of New York, the state legislation and the federal legislation radically differ as to the character of the bridge which may be constructed by the defendant. This being the situation which is the controlling authority? It seems to me there is but one answer which can be given to this question, and this answer should not be given by yielding to public sentiment or to the desires of influential public bodies who have spoken on the subject, but must be responsive to the controlling power of the supreme law of the land.

It has been settled by a long line of authorities from the time of the decision of the Supreme Court of the United States in the early and leading case of *Gibbons* v. *Ogden,* 9 Wheat. 1, to the present day, that under the clause of the Federal Constitution which vests in congress power " to regulate commerce with foreign nations, and among the several States " (U. S. Const. art. 1, § 8, clause 3), congress has paramount authority under such clause over all navigable waters of the United States.

Likewise, such authority extends to bridges over

such waters. In *Gilman* v. *Philadelphia,* 3 Wall. 713, it was said: " It must not be forgotten that bridges, which are connecting parts of turnpikes, streets and railroads, are means of commercial transportation, as well as navigable waters, and that the commerce which passes over a bridge may be much greater than would ever be transported on the water it obstructs.  *  *  * Congress may interpose, whenever it shall be deemed necessary, by general or special laws. It may regulate all bridges over navigable waters, remove offending bridges, and punish those who shall thereafter erect them. Within the sphere of their authority both the legislative and judicial power of the nation are supreme. A different doctrine finds no warrant in the Constitution, and is abnormal and revolutionary.''

In the exercise of its constitutional power under the clause referred to congress has from time to time legislated upon the subject. Two only of such laws need be mentioned.

The act of congress known as the Rivers and Harbors Act of 1899 (30 U. S. Stat. at L. 1121) provides in section 9 that it shall not be lawful to construct any bridge over any navigable river, or other navigable water of the United States until the *consent* of congress to the building of such structures shall have been obtained and until the plans for the same shall have been submitted to and approved by the chief of engineers and by the secretary of war.

There is a provision in that section that structures may be built '' under authority of the legislature of a State across rivers and other waterways, the navigable portions of which lie wholly within the limits of a single State'' upon like approval. But the navigable waters of the Hudson river do not lie wholly within New York, as during a part of its course, as has been

Supreme Court, June, 1918. [Vol. 104.

stated, it forms the boundary of New Jersey as well as of New York.

Following the Rivers and Harbors Act of 1899, congress passed what was known as the Bridge Act of March 23, 1906. 34 U. S. Stat. at L. 84. That act expresses the constitutional power of the general government to authorize the construction of bridges over navigable waters of the United States without regard to state legislation on the subject. Section 1 of the Bridge Act provides, in substance, that when a bridge is authorized by congress across navigable waters and when the plans have been approved by the chief of engineers and the secretary of war " it shall not be lawful to deviate from such plans," unless the modification shall have received like approval, and section 2 of such act provides that " any bridge built in accordance with the provisions of this Act shall be a lawful structure." There is nothing in this legislation making the legality of the bridge under such circumstances dependent upon the consent of the state.

The authority of congress to the erection of a bridge by the defendant at the place in question was had in the act of 1914 above mentioned and under the subsequent act of 1916 the time for the commencement and the completion of the bridge was extended as hereinbefore stated. The modified plans have been duly approved by the secretary of war and the chief of engineers of the United States army as required by the acts of congress.

In giving such approval the secretary of war wrote a carefully considered opinion in which he discussed at length and overruled the objections urged before him to the giving of his certificate and which objections were substantially the same as those stated in the complaint. He concluded that the proposed bridge would not be a menace to navigation and would

not be likely to increase the severity of ice gorges and the flooding incidental thereto. He also said " the whole transportation system of New England, the connection between New England and the west and northwest necessitate bridging the Hudson River, and it has already been bridged at Poughkeepsie with a high-level bridge and in Albany and Troy with many low-level bridges which are incomparably more obstructive to river traffic than the proposed bridge; that it will be of great value to the country in facilitating the handling of freight to and from New York City; that it will not obstruct navigation or render more difficult the navigation of the Hudson, and that it will in no way interfere with the proposed deep waterway for the upper Hudson and the ultimate maximum usefulness of the New York canal system and the access of water-borne freight from Canada and the west to the sea."

Thus these questions have been determined by the officer to whom congress, in the exercise of its constitutional power, has lawfully delegated them and the courts are without power to control or defeat the will of congress so expressed. *Union Bridge Co.* v. *United States,* 204 U. S. 364.

Then has followed the legislation of New York on the subject which has been mentioned and which radically differs from that of congress as to the character of the bridge.

In *Erie R. R. Co.* v. *New York,* 233 U. S. 671, 681, it was said: " The relative supremacy of the State and national power over interstate commerce need not be commented upon. Where there is conflict the state legislation must give way. Indeed, when Congress acts in such a way as to manifest its purpose to exercise its constitutional authority the regulating power of the State ceases to exist."

The fact that the state of New York owns the land under water, upon which it is proposed to erect the piers of the defendant's bridge, is assigned by the defendant as a reason why the consent of the state to the erection of such bridge must first be had. But that question has been carefully considered by the late Justice Bradley of the Supreme Court, while sitting as Circuit justice, in the United States Circuit Court of the District of New Jersey (*Stockton* v. *Baltimore & N. Y. R. Co.,* 32 Fed. Repr. 9) and he reached the conclusion that such land under water was not " private property " within the meaning of the fifth amendment to the Constitution of the United States providing that private property shall not be taken for public use without just compensation and that cession of the land under water by the state owning it was not necessary to the exercise of the privilege of building the bridge authorized by the act of congress.

The case last cited is also an authority for the conclusion I have reached in this case. It was brought by the attorney-general of the state of New Jersey for an injunction to restrain the erection of a bridge authorized by an act of congress with the approval of the secretary of war across the Staten Island sound known as "Arthur Kill " from New Jersey to Staten Island, to connect the road of the Baltimore and New York Railway Company on Staten Island with another railroad through the state of New Jersey for the purpose of interstate transportation, and the complaint was dismissed and the injunction denied. In the course of a long and well-considered opinion Justice Bradley said: " Still it is contended that, although congress may have power to construct roads and other means of communication between the states, yet this can only be done with the concurrence and consent of the states in which the structures are made. If this is so,

then the power .of regulation in congress is not supreme; it depends on the will of the states. We do not concur in this view. We think that the power of congress is supreme over the whole subject, unimpeded and unembarrassed by state lines or state laws; that, in this matter, the country is one, and the work to be accomplished is national; and that state interests, state jealousies, and state prejudices do not require to be consulted. In matters of foreign and interstate commerce there are no states.   *   *   *   We think that the power to regulate commerce between the states extends, not only to the control of the navigable waters of the country, and the lands under them, for the purposes of navigation, but for the purpose of erecting piers, bridges and all other instrumentalities of commerce which, in the judgment of congress, may be necessary or expedient.'' This case has been cited with approval by the Supreme Court of the United States in *Luxton* v. *North River Bridge Co.,* 153 U. S. 525.

In *Decker* v. *Baltimore & N. Y. R. Co.,* 30 Fed. Repr. 723, in the Circuit Court of the Southern District of New York, which was another case involving the same bridge over the Arthur Kill, an injunction was also denied at the suit of a vessel owner to restrain the construction of such bridge.

The late Judge Wallace in his opinion in that case reviewed the cases where some expressions of opinion had been given by judges to the effect that congress cannot, under the power of regulating commerce, authorize the erection of bridges over navigable waters or sanction an obstruction of commerce without the consent of the state and pointed out several instances where such expressions were *obiter* or were contained in dissenting opinions. He also cited and followed authorities holding the other way. In the course of his

opinion, Judge Wallace said: " Whether the waters are wholly within the boundaries of a state, or, as here, lie between two states, is not material. They are navigable waters of the United States, if they form by themselves, or by uniting with others, a continuous highway for commerce with other states or countries. (*The Daniel Ball,* 10 Wall. 557; *Escanaba Co.* v. *Chicago,* 107 U. S. 682.) The power of control over such waters necessarily includes the power of deciding what structures are impediments to commerce; and by an unbroken line of decisions, it is settled that the paramount authority regulating bridges that affect the navigation of the navigable waters of the United States is in congress. * * * She (the State of New Jersey) has no control of the water-way for the purposes of navigation which is not subordinate to the will of congress. She can make no use of it against the will of congress. * *. * If the constitutional power of congress over the navigable waters of the United States is confined to a mere negation of state authority over them, if congress can only ratify and prohibit what the state proposes, if it has no faculty of independent action, and no vigor to originate, then instead of being paramount, the power is practically subordinate to the power of· the state. Yet it has never been doubted that, within the scope of its powers, the government of the United States is supreme, or that its authority, when asserted, is, to the extent asserted, of·necessity exclusive.''

The plaintiff cites the recent case in the Court of Appeals of *People* v. *International Bridge Co.,* 223 N. Y. 137, and insists that it is controlling on the questions involved here. But I do not so view it. That was an action to recover penalties against the defendant for its failure to build on its bridge across the Niagara river roadways for pedestrians and vehicles

in accordance with the plans approved by the secretary of war and in accordance with its contractual obligations so to do. It was a case where no authority to construct the bridge came from congress, and what was said in the opinion of the court with respect to the question of the relative control of the federal and the state government, was in reliance on the cases of *Escanaba Co.* v. *Chicago,* 107 U. S. 678, and *Cummings* v. *Chicago,* 188 id. 410, in each of which cases the river involved was regarded by the court as wholly within a single state and each of which cases antedated the Federal Bridge Act of March 23, 1906, hereinbefore referred to and discussed.

I think for the reasons stated that the acts of congress and the determination of the secretary of war pursuant to them are controlling as to the kind of bridge the defendant may construct and that state legislation prescribing a different kind cannot be effective to overrule the federal authorities.

The demurrer, as to each defense, is overruled, with costs.