LITTLE FALLS FIBRE COMPANY et al., Respondents, *v.* HENRY FORD & SON, INC., Appellant.

496

(Argued October 23, 1928; decided December 31, 1928.)

*Charles E. Nichols, Jr.,* and *Robert E. Whalen* for appellant. Defendant's complete justification is found in its license from the Federal Power Commission, as supplemented by the regulations, approved by the Secretary of War, which govern the installation of the flashboards. (*People* v. *Page,* 39 App. Div. 110; *People ex rel. Loomis* v. *Canal Appraisers,* 33 N. Y. 461; *Danes* v. *New York,* 219 N. Y. 67; *People* v. *Gilchrist,* 221 App. Div. 19; *People* v. *N. Y. & O. Power Co.,* 219 App. Div. 114; *Gibbons* v. *Ogden,* 9 Wheat. 1; *People* v. *Hudson River Connecting R. R. Corp.,* 228 N. Y. 203; *Gilman* v. *Philadelphia,* 3 Wall. 713; *United States* v. *Chandler-Dunbar Co.,* 229 U. S. 53; *Alabama Power Co.* v. *Gulf Power Co.,* 283 Fed. Rep. 606; *New Jersey* v. *Sargent,* 269 U. S. 328.) What the Federal government itself could have done legally, it can lawfully accomplish through the agency of the defendant. (*Wisconsin* v. *Duluth,* 96 U. S. 379; *Clallan County* v. *U. S.,* 263 U. S. 341; *Westfall* v. *U. S.,* 274 U. S. 256; *People* v. *Hudson River Connecting R. R. Co.,* 228 N. Y. 203; *Central Pacific R. R.* v. *California,* 162 U. S. 91; *Southern Pacific R. R.* v. *United States,* 183 U. S. 519; *Transportation Co.* v. *Chicago,* 99 U. S. 635; *Green Bay, etc., Co.* v. *Patten Paper Co.,* 172 U. S. 58; *Jaybird Mining Co.* v. *Weir,* 271 U. S.

609; *Alabama Power Co.* v. *Gulf Power Co.*, 283 Fed. Rep. 606.) The motive of the defendant in erecting the flashboards is immaterial. (*Green Bay, etc., Co.* v. *Patten Paper Co.*, 172 U. S. 58; *Kiff* v. *Youmans*, 86 N. Y. 324; *Waterloo Mfg. Co.* v. *Shanahan*, 128 N. Y. 345; *Chase-Hibbard Co.* v. *City of Elmira*, 207 N. Y. 460.) Even were the judgment right on the merits, the extra allowance granted to plaintiffs exceeds the statutory limit. (*People* v. *Page*, 39 App. Div. 110; *Conaughty* v. *Saratoga County Bank*, 92 N. Y. 401; *Hathorn* v. *Natural Carbonic Gas Co.*, 179 App. Div. 425; *Williamsburgh City Fire Ins. Co.* v. *Central New England Ry. Co.*, 202 App. Div. 813; *Rothery* v. *New York Rubber Co.*, 24 Hun, 172; 90 N. Y. 30.)

*George E. O'Connor* and *Thomas O'Connor* for respondents. The mere permission or license from the Secretary of War for the installation of flashboards on the dam does not create any agency nor does it invest the defendant with any " privilege " or " immunity " to seize a portion of plaintiffs' water power without incurring any liability. (*Cobb* v. *Commissioners of Lincoln Park*, 202 Ill. 427; *Pumpelly* v. *Green Bay Co.*, 80 U. S. [30 Wall.] 166; *Sammons* v. *City of Gloversville*, 175 N. Y. 346; *Murphy* v. *Commissioners of Emigration*, 28 N. Y. 134; *Brown-Brandt Realty Co.* v. *Saks*, 126 Misc. Rep. 336; *Bellinger* v. *New York Central R. R. Co.*, 23 N. Y. 42.) The Federal government itself could not take plaintiffs' water power without making compensation therefor as required by the Constitution. (*United States* v. *Cress*, 243 U. S. 316; *Matter of State Reservation*, 37 Hun, 537; *Monongahela Navigation Co.* v. *United States*, 148 U. S. 312; *Boyd* v. *The United States*, 115 U. S. 616; *United States* v. *Lynch*, 188 U. S. 445; *American Woolen Co.* v. *State*, 195 App. Div. 698; *Comrs. of Canal Fund* v. *Kempshall*, 26 Wend. 414.) The extra allowance granted to plaintiffs should be increased. (*Conaughty* v. *Saratoga County Bank*, 92 N. Y. 401; *United Paper Bd. Co.* v. *Iroquois P. & P. Co.*, 226 N. Y. 38; *Lattimer* v. *Livermore*,

72 N. Y. 174; *Empire City Subway Co.* v. *Broadway & Seventh Ave. R. R. Co.*, 87 Hun, 279; 159 N. Y. 555; *Henderson Est. Co.* v. *Carroll Elect. Co.*, 113 App. Div. 775; 189 N. Y. 533; *Hudson Riv. Tel. Co.* v. *Watervliet T. & R. Co.*, 135 N. Y. 393; *People* v. *Rochester Dime Sav. Assn.*, 7 App. Div. 350; *Rochester & H. V. R. R. Co.* v. *City of Rochester*, 17 App. Div. 257; 163 N. Y. 58; *Hayden* v. *Matthews*, 4 App. Div. 338; 158 N. Y. 785.)

POUND, J. The Federal Water Power Act (June 10, 1920, ch. 285; 41 Stat. 1063; U. S. Code, title 16, § 797, subd. d) created the Federal Power Commission which is empowered, with limitations not applicable to this case, " To issue licenses to citizens of the United States, or to any association of such citizens, or to any corporation organized under the laws of the United States or any State thereof, or to any State, or municipality for the purpose of constructing, operating, and maintaining dams, water conduits, reservoirs, power houses, transmission lines, or other project works *necessary or convenient for the development and improvement of navigation, and for the development, transmission, and utilization of power* across, along, from or in any of the navigable waters of the United States, or upon any part of the public lands and reservations of the United States (including the Territories), or for the purpose of utilizing the surplus water or water power from any Government dam, except as herein provided."

The defendant applied to the Federal Water Power Commission for permission " to install flashboards on the Troy Dam in connection with our power house." The Troy Dam is a Federal wing dam in the Hudson river at Troy constructed to regulate navigation under an act of Congress. Defendant has a power house at Green Island using power developed at the dam. It desired to raise the level of the dam in order to develop more power. The Commission thereupon issued to it a water power license. The terms of the license are unnecessarily broad

and are operative practically, so far as this litigation is concerned, only as applied to the maintenance of the flashboards. The flashboards were erected by defendant with the result that the water from down stream backed up so as to reduce the head at plaintiffs' manufacturing plants up stream. Plaintiffs are riparian owners who claim to be entitled to the flow of the stream as against this defendant, unobstructed by the flashboards. (*Clinton* v. *Myers*, 46 N. Y. 511, 516; *U. S.* v. *Rio Grande Dam & Irrigation Co.*, 174 U. S. 690, 702.) Their rights must yield to the power of Congress to regulate commerce (U. S. Const. art. 1, § 8, clause 3), but not to individuals. (*Sage* v. *Mayor*, 154 N. Y. 61.) They brought this action for an injunction and damages. They have succeeded in obtaining a judgment enjoining the defendant from maintaining the flashboards and awarding damages. The question is whether they must submit to the authority of the Federal Water Power Commission as asserted by the defendant under its license.

The construction of dams in the Hudson river without the consent of the Federal government is prohibited.

" It shall not be lawful to construct or commence the construction of any bridge, dam, dike, or causeway over or in any port, roadstead, haven, harbor, canal, navigable river, or other navigable water of the United States until the consent of Congress to the building of such structures shall have been obtained and until the plans for the same shall have been submitted to and approved by the Chief of Engineers and by the Secretary of War: Provided, That such structures may be built under authority of the Legislature of a State across rivers and other waterways the navigable portions of which lie wholly within the limits of a single State, provided the location and plans thereof are submitted to and approved by the Chief of Engineers and by the Secretary of War before construction is commenced." (U. S. Code, title 33, § 401.)

Since the enactment of chapter 425, Acts of Congress,

1899, " the creation of any obstruction not affirmatively authorized by Congress, to the navigable capacity of any of the waters of the United States is * * * prohibited," even though the waterway is within the limits of a single State. (U. S. Code, title 33, § 403; *U. S.* v. *Rio Grande Dam & Irrigation Co., supra,* pp. 708, 709; *Economy Light Co.* v. *U. S.,* 256 U. S. 113, 123.) It has been held that these sections do not imply that the " affirmative authorization " of the building of a dam under such a permit is given by Congress with the same effect as though Congress had undertaken the enterprise itself. They merely place a condition upon the exercise of such right. The right to construct the dam must be established independently of the Federal permit. (*International Bridge Co.* v. *New York,* 254 U. S. 126, 132.)

The sections above quoted are negative. The provisions of the Federal Water Power Act are affirmative. They purport to permit and regulate the granting of licenses for power purposes. Defendant claims to have obtained from the Commission more than a permit to place an obstruction in a navigable stream; more than a permit which purports to give the defendant no right to build the structure and merely sanctions the exercise of rights obtained elsewhere. The Commission has made a finding, without taking evidence to support it, in substance in the language of the Water Power Act (U. S. Code, title 16, § 797, subd. d) " that the contemplated improvement is desirable and justified in the public interest *for the purpose of improving and developing* the Hudson River for the use and benefit of interstate commerce." It has also made regulations pursuant to Federal Water Power Act, section 18 (U. S. Code, title 16, § 811) to govern the maintenance of the flashboards " in the interests of navigation."

Although the act provides (§ 10-c; U. S. Code, title 16, § 803, subd. c): " Each licensee hereunder shall be liable for all damages occasioned to the property of others

by the construction, maintenance, or operation of the project works or of the works appurtenant or accessory thereto, constructed under the license, and in no event shall the United States be liable therefor," defendant contends that this section is inapplicable; that plaintiffs have suffered no damages because there has been no taking of private property but merely a regulation of the flow of the river by the Federal government in aid of navigation, for which the plaintiffs could have no compensation against the United States and, therefore, none against its licensee. Private property may not be taken for public use without compensation ( *U. S.* v. *Cress,* 243 U. S. 316), but the flow of the stream of a navigable river is in no sense private property and there is no room for judicial review, at the instance of the private owner of the banks of a stream whose lands are not flooded, of a determination of Congress that such flow is needed for the purposes of navigation. ( *U. S.* v. *Chandler-Dunbar Water Power Co.,* 229 U. S. 53; *New Jersey* v. *Sargent,* 269 U. S. 328, 337.) Defendant asserts that its license is the equivalent of such a determination of Congress and is not subject to judicial review.

The first question is as to the effect of a Federal permit to place an obstruction in a navigable stream for the private business purposes of the licensee upon the rights of up-stream owners to the free flow of the stream.

The jurisdiction of the Federal Power Commission to issue a license for the use of the waters of the Hudson river for power purposes and the effect of such a license are to be determined by the courts. When some right asserted under a license becomes the subject of actual controversy, excess of jurisdiction is a necessary ground for judicial review to maintain the supremacy of law and keep administrative boards to the exercise of their delegated powers. (*Matter of Quinby* v. *Public Service Commission,* 223 N. Y. 244; *New Jersey* v. *Sargent, supra,* p. 339.) The finding of the Commission that the

project work is in aid of navigation is not conclusive on the courts in the absence of evidence to support it, even though the license is in form within the delegated powers of the Federal Water Power Commission. (*People ex rel. N. Y. & Queens Gas Co.* v. *McCall*, 245 U. S. 345, 348.)

It may be assumed, although we do not attempt to decide, that Congress may, in connection with its limited enumerated express or implied powers, provide for the development of water power in aid of or as incidental to such powers (U. S. Const. art. 1, § 8, clause 18); and that it may not, within the scope of the Constitution, go into the business of power development as an independent proposition. The extent of the authority of Congress to enact laws to carry into execution its enumerated powers need not be considered at this time. Doubtless it is very broad. (*M'Culloch* v. *Maryland*, 4 Wheaton [U. S.] 316; *Legal Tender Case*, 110 U. S. 421; *New Jersey* v. *Sargent, supra.*) How far Congress may delegate its powers to regulate navigation in this connection remains an open question. We will assume, although we do not so decide, that the Federal Water Power Act, properly construed, is a constitutional exercise of legislative power. (*New Jersey* v. *Sargent, supra.*) The license granted to defendant herein does not result in any development and improvement of navigation. Its plain effect is the removal of the prohibition of Congress against the placing of an obstruction in a navigable stream; nothing more is accomplished.

The evidence on the trial clearly establishes the fact that the flashboards are neither authorized by the Commission nor maintained by defendant except for the private purposes of defendant in developing power and that their erection has no relation to " the interests of navigation " except that they must not interfere with navigation. The license, so far as it purports to delegate to defendant the powers of Congress to regulate navigation, is an extra-jurisdictional act of an administrative board, affording no protection to defendant as against the rights of others.

In conclusion, we have no reason to assume that the Federal Water Power Commission intended by its license to exempt the holder from liability for damages to the rights of others or to legalize what would otherwise be a trespass as to them. Defendant, we think, places more reliance on the form than on the substance of its permit. Congress did not authorize the grant of water power licenses which might be utilized to the detriment of existing power rights without compensation. (*Head* v. *Amoskeag Mfg. Co.*, 113 U. S. 9, 26; U. S. Code, title 16, § 814.)

A question of costs remains. We are of the opinion that the additional allowance based on " the value of the subject matter involved " was proper (Civ. Prac. Act, § 1513, subd. 2), the subject-matter involved being the plaintiffs' right to use the water of the river without interference and one of the plaintiffs having suffered no damage on which the additional allowance could be computed.

The judgment should be affirmed, with costs.

CRANE, J. (concurring). The permission given by the Federal Power Commission to install flashboards on the Troy Dam was nothing more or less than permission. It meant that so far as the United States government was concerned, it had no objection to the applicant making this use of the dam. In the same way, it might have given permission to an individual to walk over it. If he did any damage in walking over it, or any damage in putting up the flashboards, that was his own lookout, for which he would have to pay. The applicant was not obliged to put up any flashboards for any purposes of the United States government; it was solely his own affair; he could do it or not just as he pleased. The Commission merely said: " We have no objection." I do not see how the power of the Commission is involved in this litigation.

CARDOZO, Ch. J. (concurring in result). The license by the Commission, whether within the jurisdiction of

that body or without it (cf. *People ex rel. Lehigh Valley Ry. Co.* v. *State Tax Comm.*, 247 N. Y. 9, 15), did not exempt the holder from liability for damage caused to others by a diversion of the waters, nor authorize the impairment without requital of existing rights of property (U. S. Code, title 16, § 803, subd. c; § 814; *Otis Co.* v. *Ludlow Mfg. Co.*, 201 U. S. 140, 152; *Kaukauna Co.* v. *Green Bay Canal Co.*, 142 U. S. 254, 276; *Head* v. *Amoskeag Mfg. Co.*, 113 U. S. 9, 23, 26).

Until such rights have been condemned by appropriate proceedings (U. S. Code, title 16, § 814; cf. N. Y. Condemnation Law [Consol. Laws, ch. 73], §§ 17, 24; *Sweet* v. *Rechel*, 159 U. S. 380, 401; *Crozier* v. *Krupp*, 224 U. S. 290), the defendant is still a trespasser in obstructing the flow of the stream to the damage of a neighbor.

Whether the power of eminent domain may lawfully be exercised under section 814 of the statute by one so situated as the defendant is a question not before us.

The judgment should be affirmed with costs.

ANDREWS, J. (concurring in result). Before 1789 the bed of the Hudson river was the property of the State of New York. It also exercised governmental control over its waters. In a navigable stream, whatever property and powers the State had were held in trust for the people of New York and were subject to their right to use the river for their own navigation and commerce. (*Matter of Mayor*, 182 N. Y. 361; *People ex rel. Palmer* v. *Travis*, 223 N. Y. 150.) The State might regulate its flow by dams or other means. It might improve its bed. It might remove obstructions. It might to a reasonable extent divert its waters into canals. It might exercise all the powers possessed by the King and Parliament before the Revolution.

A riparian proprietor also had certain rights. He was entitled to access of the stream. He might erect docks not interfering with navigation. (*Town of Brookhaven* v. *Smith*,

188 N. Y. 74.) He might divert reasonably its flow and lead it over his own land so creating water power. And he might do this as well where the level of the river was raised by a State dam as where the river passed his property in its natural condition if only such surplus was taken as was not needed for State purposes. (*United Paper Board Company* v. *Iroquois Pulp & Paper Company*, 249 N. Y. 588.) Except to improve navigation the State would have no right to deprive him of the use of the amount of water which naturally ran past his premises.

Some things, however, were not permitted. Without consent he might not enter upon State lands and erect structures thereon. He might not build a dam or other obstruction to the flow of the river. If he did he created a purpresture, or, if it also interfered with navigation, a public nuisance. (*People* v. *Vanderbilt*, 26 N. Y. 287; *Ice Company* v. *Schultz*, 116 N. Y. 382.) In either case it might be abated and removed at the suit of the Attorney-General. If a public nuisance a remedy might also be had in an action by any one shown to be especially injured thereby. So I think, if a purpresture. Under our form of government, title being in the people, any one especially injured by the invasion of their rights should have a remedy as in the case of a nuisance.

All these rights and powers remain unchanged except in so far as we have chosen to surrender them to the government of the United States. We did agree that Congress should have power to regulate commerce with foreign nations and among the several States. Just how far we believed we surrendered our authority over the Hudson by this clause is far from clear. Singularly little appears in the debates of the Convention, in the debates here when the Constitution was ratified or in the *Federalist* on the subject, although the need for the creation of a central authority to regulate commerce was one of the moving causes for the adoption of the Constitution. (*Brown* v. *Maryland*, 12 Wheat. [U. S.] 419.)

Whatever may have been understood at the time we are admonished that the words used are to be given a broad significance. (*Gilman* v. *Philadelphia*, 3 Wall. [U. S.] 713; *Gibson* v. *United States*, 166 U. S. 269; *United States* v. *Chandler-Dunbar Water Power Co.*, 229 U. S. 53; *New Jersey* v. *Sargent*, 269 U. S. 328.) They confer the power not only to regulate shipping itself but to regulate the stream. Congress may deepen the river; turn one channel into another; remove obstructions; build dams to regulate the flow of the water; forbid, without its consent, the erection of structures that do or may interfere with navigation, and may doubtless do many other things. But there is a limit to its power. Whatever it does must be " to regulate commerce with foreign nations and among the several states." It has no rights in the Hudson not connected with navigation. (*Groat* v. *Moak*, 94 N. Y. 115; *People* v. *International Bridge Company*, 223 N. Y. 137, 145.) And it is for the courts to determine whether this limit has been exceeded. They must decide ultimately whether congressional regulation has any relation to commerce. (Chief Justice FULLER in *Lottery Cases*, 188 U. [S. 321.) If it has not, there is no basis upon which it may rest.

Undoubtedly Congress may determine for itself what is an obstruction to a navigable stream and its determination is conclusive. It may forbid the erection of bridges or dams or it may, so far as it is concerned, permit them with the consent of some official. It does these things in connection with its power over commerce. It has no power, however, to give an individual plenary authority to erect a dam for power purposes across the Hudson. Its permit merely waives an objection to such a work that the United States might otherwise make. Any one relying on that permit alone commits a trespass upon the lands of the State. He invades its property. As has been said, it is a purpresture subject to abatement. And as I have before indicated, I think any one especially injured has a remedy.

The act we have before us is a general one as is pointed out by the chief judge subjecting all dams and similar buildings to Federal license and supervision. So much may be done. Their erection and maintenance directly affect the flow of a navigable river. They cannot be built without Federal consent. (*People ex rel. Lehigh V. Ry. Co.* v. *Tax Commission*, 247 N. Y. 9.) But this consent is not enough unless it is given in aid of navigation. It removes but one obstacle in the way of the lawful maintenance of the dam.

Taken at its face value the act does more than refer to navigation. It permits dams for the development of water power. This Congress has no power to do. At most it may give its consent if the dam is otherwise permitted. Under that consent alone the defendant has no authority to do what it has done.

For on its face the permission shows it was given with no reference to commerce. Clearly it was simply to allow the defendant to develop water power for manufacturing purposes. Acting under it alone the defendant has violated the rights of the State and has also injured the plaintiffs.

It seems to me immaterial whether we construe the statute with an " or " or an " and." If with " or " it is plainly a usurpation of power nowhere conferred. If with " and," I think it equally unauthorized. I do not think the United States may traffic in excess power, created by a dam legally created for purposes of commerce. What is said in the *Chandler-Dunbar* case is plainly a dictum. But whether this be so or not we need not decide. Here, as has been said, there is no attempt to sell such excess power. New power is attempted to be created for purely private purposes.

CRANE, J., in memorandum, LEHMAN, KELLOGG and O'BRIEN, JJ., concur with POUND, J.; CARDOZO, Ch. J., and ANDREWS, J., in opinions concur in result.

Judgment affirmed, etc.