The relator is a domestic railroad corporation. It was organized pursuant to chapter 763 of the Laws of 1866, by which act it was made lawful for certain persons therein named, and their associates "When duly formed into a corporation, under and pursuant to an act to authorize the formation of railroad corporations, and to regulate the same, passed April second, eighteen hundred and fifty, except as hereinafter (therein) provided, to construct, maintain and operate a railroad, * * * from some point at or near the Byram river, at the village of Port Chester, in the town of Rye, in the *Page 509 
county of Westchester and state of New York, to Harlem river, in said county. * * *" It was provided by section 3 of said act of 1866 that "whenever it shall be necessary in the construction of said road, to intersect or cross any river, or stream of water or water course, navigable or otherwise, or any road or highway, it shall be lawful for the corporation to construct their road across or upon the same, but only in such manner as not to impair the usefulness of such river, stream of water, water course, road or highway; and whenever it may be necessary so to cross any navigable river, stream of water, or any road or highway, such corporation shall construct and maintain substantial bridges with suitable draws, and viaducts with proper openings, over or across the same, whenever the same may be necessary."
The railroad was built, and as built was carried over the Bronx river and over the Hutchinson river (Pelham bay) by trestles and bridges. The state board of tax commissioners in each of the years 1909, 1910 and 1911 assessed the relator for a special franchise at each of said crossings and included in the assessment the value of the bridge as tangible property, a part of the special franchise. The only question presented by the appeals to this court is whether said assessments were authorized.
The three proceedings were tried together, and although separate findings and orders have been made in each proceeding they are substantially the same, and our references herein to them are applicable to each proceeding. The Special Term found among other things as follows:
IV. That in or about the year 1872 the relator constructed its railroad and bridges across the Bronx river and Hutchinson river or Pelham bay at the points within the route designated on the location maps.
V. That the Bronx river and Hutchinson river or Pelham bay are navigable rivers or waters.
VI. That the relator's bridges across Bronx river and *Page 510 
Hutchinson river or Pelham bay are draw bridges, built pursuant to the terms and approval of the Federal authorities.
IX. That the relator acquired before constructing said bridges or either of them, and owned at the time of the assessments herein the fee to the land on each side of said rivers on which the abutments of said bridges and each of them rest.
X. That by letters patent from the state of New York, relator acquired under date of November 26th, 1895, a strip of land in the bed of Hutchinson river or Pelham bay extending from the westerly high-water mark to the easterly high-water mark across the entire stream and 66 feet in width, within which its railroad lay, at the time of the assessment herein.
As a conclusion of law the court found "that the relator's bridges and trestles over the Bronx river and Hutchinson river, or Pelham bay, are assessable as and for special franchises."
A special franchise is defined by section 2, subdivision 3, of the Tax Law (Chapter 60 of the Consolidated Laws) as follows:
"The terms `land,' `real estate,' and `real property," as used in this chapter, include the land itself above and under water, all buildings and other articles and structures, substructures and superstructures, erected upon, under or above, or affixed to the same; * * * all bridges, * * * all surface, underground or elevated railroads, including the value of all franchises, rights or permission to construct, maintain or operate the same in, under, above, on or through, streets, highways or public places; * * *. A franchise, right, authority or permission specified in this subdivision shall for the purpose of taxation be known as a `special franchise.' A special franchise shall be deemed to include the value of the tangible property of a person, copartnership, association or corporation situated in, upon, under or above any street, *Page 511 
highway, public place or public waters in connection with the special franchise. The tangible property so included shall be taxed as a part of the special franchise."
The general franchise of a corporation is its right to live and do business by the exercise of the corporate powers granted by the state. When a right of way over a public street is granted to such corporation, with leave to construct and operate a street railroad thereon, the privilege is known as a special franchise, or the right to do something in the public highway, which, except for the grant, would be a trespass. (People ex rel. Metr. St.Ry. Co. v. State Board of Tax Comrs., 174 N.Y. 417, 435;People ex rel. N.Y.C. H.R.R.R. Co. v. Gourley, 198 N.Y. 486. )
The right granted to the relator by the section of the act of 1866 quoted was, and is, a special franchise. (People ex rel.Metr. St. Ry. Co. v. State Board of Tax Comrs., supra; Peopleex rel. Hudson Man. R.R. Co. v. State Board of Tax Comrs.,203 N.Y. 119; People ex rel. Buffalo Lake Erie Traction Co. v. State Board of Tax Comrs., 209 N.Y. 502.)
The bridges and trestles enabling the relator to pass over said public waters are tangible property connected with the special franchises. The relator contends that its right to cross said public waters and the tangible property connected therewith, should not under the findings of fact quoted, be assessed as a special franchise, and cites as its authority for such contentionPeople ex rel. Hudson Man. R.R. Co. v. State Board of TaxComrs., (supra), and People ex rel. N.Y.C. H.R.R.R. Co. v.Woodbury (206 N.Y. 304).
The grant to the relator mentioned in finding "ten," quoted, was upon the express condition that nothing but pile bents be erected on the lands therein described between the ends of the present (November 26, 1895) draw spans and points three hundred feet either way from the center of the present drawbridge pier. *Page 512 
The grant was subject to the public easement of navigation. (Smith v. Bartlett, 180 N.Y. 360, 365.)
It appears in the Hudson Manhattan Railroad Company Case(supra, p. 129) that the upper tunnels (so called) in the Hudson river were built upon lands under water, an interest in which had been acquired by the company, which interest in such lands is 160 feet in width and 40 feet in height beneath the lands under the waters of the Hudson river. Its tunnel was constructed on its own right of way and not by virtue of any special franchise. It is said in the opinion in that case: "The right here granted was the private right or title to the soil, which in no way conflictedwith or affected the rights of the public in the river. It is some privilege that has been given a party either in derogation of the public right, or as sharing in or by virtue of the public right that is a special franchise, not where all that has been done is done by virtue of the ownership of the soil or some interest therein."
It was further said in the opinion: "The principle which we have stated does not apply to the lower tunnels, the relator's right to construct and maintain which proceeds entirely from the grant of the rapid transit commission as a part of a continuous subway road under the streets of the city of New York and the waters of the Hudson to the state line. It follows that the upper tunnels should be assessed by the local officers of the city of New York as other property is assessed."
In the cases now under consideration the bridges were built pursuant to the authority given to the relator by the act of 1866. In these cases, unlike the Hudson Manhattan RailroadCompany case, the bridges do conflict with and affect the rights of the public in public waters. The privilege so given to the relator in derogation of the public right, or of sharing in such public right, is a special franchise.
The relator contends that under the authority of the *Page 513 New York Central Hudson River Railroad Company Case
(supra), the relator should not be required to pay an assessment as for a special franchise because the bridges over the Bronx river and over the Hutchinson river (Pelham bay), like the bridge over the Harlem river, are built upon abutments wholly erected upon lands owned in fee by the relator. It was said in the opinion in the New York Central Hudson River RailroadCompany case that "Included in said assessment was the value of the bridge over the Harlem river from the abutment on the south side of said river to the center of said bridge. It appears that the abutments upon which said bridge is built are upon lands owned in fee by the Harlem Company. The bridge is tangible property, and so far as appears from the record it is not immediately connected with any special franchise. It is not, in the language of the Tax Law, `tangible property' * * * situated in, upon, under or above any street, highway, public place or public waters in connection with the special franchise." (p. 308.)
In that case it was asserted in this court by the relator therein that neither the city nor the state of New York had any right, title or interest in the Harlem river or the land under it across which the bridge extends.
It presented to this court by the record in confirmation of its contention, chapter 147 of the Laws of 1876, chapter 345 of the Laws of 1879, chapter 65 of the Laws of 1880, chapter 61 of the Laws of 1881, chapter 377 of the Laws of 1882 and chapter 214 of the Laws of 1883 — also resolutions of the commissioners of the sinking fund of the city of New York, dated October 2, 1879, and September 7, 1881, and a deed executed by the mayor, aldermen and commonalty of the city or New York, dated March 31, 1882, ceding, granting and conveying to the United States of America certain pieces or parcels of land under the waters of the Harlem river therein specifically described for the purposes of the improvement known as *Page 514 
the Harlem ship canal. It was further asserted that the Harlem bridge under consideration was wholly within the lands so ceded, granted and conveyed to the United States of America. The claim of the relator, appellant, in that case was not denied in this court by the defendants. The argument on behalf of the city and the board of tax commissioners was placed wholly upon the claim that the bridge over the Harlem river was tangible property connected with the special franchise of the relator in Park avenue. The language of the court in the New York Central Hudson River Railroad Company case, from which we have quoted, was used in view of the claim therein made, It did not appear from the record in that case that the bridge over the Harlem river was immediately connected with any special franchise. The bridges over the Bronx river and over the Hutchinson river, Pelham bay, are tangible property situated above public waters. The relator's right to cross said public waters is a special franchise.
The orders should be affirmed, with one bill of costs.
WILLARD BARTLETT, Ch. J., HISCOCK, CUDDEBACK, HOGAN, MILLER and SEABURY, JJ., concur.
Orders affirmed.