THE PEOPLE OF THE STATE OF NEW YORK ex rel. POSTAL TELEGRAPH-CABLE COMPANY, Respondent, *v.* STATE BOARD OF TAX COMMISSIONERS, Appellant, and the CITY OF NEW YORK, Intervenor, Appellant.

First Department, February 15, 1918.

Tax — telegraphs and telephones — taxation of franchise of telegraph company incorporated under chapter 265 of the Laws of 1848, as amended — effect of granting of subsequent license to said company under Post Roads Act — enforcement of collection of tax.

The right granted by the State to a telegraph company incorporated under chapter 265 of the Laws of 1848, as amended, to occupy the streets and navigable waters within the limits of the city of New York, constitutes a special franchise taxable as real property under the Tax Law.

A license given to said company under the Federal Post Roads Act to use the facilities which had been granted by the State, and giving the further right to extend such facilities upon the post roads in other States, gave to said company no property rights in the streets and did not destroy the special franchise granted by the State, but supplemented it, and, therefore, did not affect the right of the State to tax said franchise.

The enforcement of the tax on such a special franchise, pursuant to section 306 of the Tax Law by sequestration or by action at law, will not violate the Post Roads Act.

APPEAL by the defendant, State Board of Tax Commissioners, and by the intervenor, the City of New York, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 1st day of June, 1917, reducing the assessment for purposes of taxation of certain special franchises in the boroughs of Manhattan, The Bronx and Brooklyn owned by the relator.

*Martin Saxe* of counsel [*Charles R. McSparren* with him on the brief; *Merton E. Lewis, Attorney-General*], for the defendant, appellant.

*William H. King* of counsel [*Addison B. Scoville* with him on the brief; *Lamar Hardy, Corporation Counsel*], for the intervenor, appellant.

*D-Cady Herrick* of counsel [*William W. Cook, Henry G. Fritsche* and *George H. Mallory* with him on the brief; *Henry G. Fritsche,* attorney], for the respondent.

PAGE, J.:

The proceeding was instituted by petition for and allowance of a writ of certiorari by the Postal Telegraph-Cable Company, to review assessments levied by the State Board of Tax Commissioners for the year 1912 against the special franchises of the relator in the various boroughs of the city of New York. For the purposes of the trial the parties entered into a stipulation whereby the relator waived the issue of overvaluation raised in its petition, and agreed not to contest the assessment on the relator's tangible properties in the streets, highways, public places and public waters of the city of New York, and not to contest the assessment on

relator's intangible properties in the streets, highways, public places and public waters on the ground of overvaluation but that the same may be contested on the ground of illegality, as set forth in paragraph 5, which reads as follows: " That the sole issue to be tried herein is whether in view of the Post Roads Act (U. S. Revised Statutes, Sections 3964, 5263 to 5269 and Chapter 9 of Volume 23 of the U. S. Statutes at Large*) the relator's franchise rights, authority or permission to construct, maintain or operate its telegraphic properties and appurtenances in streets, highways, public places or public water in the City of New York are subject to taxation by the State Board of Tax Commissioners under the provisions of the Tax Law of the State of New York."

The parties do not agree upon the effect and meaning of this stipulation, the relator claiming that it has the right to review the assessment upon the ground that its sole right to use the streets, highways, public places and public waters is derived from its permission to use the same from the United States government, by virtue of its acceptance of the terms and conditions of the " Post Roads Act," and also to have the assessment declared illegal on the ground that what is termed by counsel its Federal franchise was included in the assessment together with its State special franchise, while the defendants claim that the sole question to be considered is whether this so-called Federal franchise has superseded the State special franchise so that there is no special franchise that is subject to taxation by this State. It is conceded that the State would have no power to tax a Federal franchise. Interpreting the stipulation in connection with the petition of the relator, the construction placed on the stipulation by the defendants would seem to be correct. Subdivision 2 of the petition reads as follows: " That the valuation or assessment of $366,000 so made as aforesaid, excepting therefrom the tangible property of your petitioner (in value $135,061) situated in, upon, under or above any streets, highways or public places in the said City of New York, was *entirely* based upon the value of franchises, rights, authority or permission that were not granted, had or enjoyed from the State of New

---

* See p. 3.— [REP.

780   People ex rel. Postal Tel.-C. Co. *v.* Bd. Tax Comrs.

First Department, February, 1918.        [Vol. 181.

York or the City of New York, but were granted, had and enjoyed from the United States Government, and from the owner of the fee of the adjoining premises."

As all the issues are waived by the stipulation except that of the illegality of the assessment upon the grounds set forth in paragraph 5, it would appear to have been the intention that the sole issue should be that specified in paragraph 5. In my opinion there is no practical difficulty presented by the difference of construction of the stipulation.

The relator was incorporated under the name of the New England Telegraph Company on the 10th day of August, 1883, under and pursuant to an act of the Legislature of the State of New York passed April 12, 1848 (Laws of 1848, chap. 265), entitled: " An act to provide for the incorporation and regulation of telegraph companies " and the acts amendatory thereof and supplementary thereto, as stated in the certificate of incorporation for the purpose of constructing a line or lines of aerial or underground wires of telegraph from and to points within this State, and for the purpose of owning, constructing, using and maintaining a line or lines of aerial or underground, electric telegraph within and partly beyond the limits of this State, and for the purpose of owning interests in such a line or lines of electric telegraph and any grants therefor. It was further stated: " The general route of the line of telegraph of said association and the points to be connected are as follows, viz.: from a main office in the vicinity of the Produce Exchange in the City of New York, in the State of New York, to other points in said City where branch offices of the said Association may be established, and from such offices along, across, over and under streets and avenues and over buildings in said City to and into buildings therein so as to connect such buildings with the offices of the Association, and to connect all such offices with each other, and also to connect the City of New York with other cities in said State of New York and with various points within such cities and with cities in other States and more particularly with the City of Bangor in the State of Maine."

By section 5 of the act of 1848 and chapter 471 of the Laws of 1853 a company incorporated under said act was authorized to construct lines of telegraph, and to erect and

construct, from time to time, the necessary fixtures for such lines of telegraph upon, over or under any of the public roads, streets and highways, and through, across or under any of the waters within the limits of this State, provided the same shall not be so constructed as to incommode the public use of said roads or highways, or injuriously interrupt the navigation of said waters; and the further right was given to exercise the right of eminent domain and acquire the right to erect and construct such fixtures over other lands. The grant of such a right to occupy public roads, streets, highways and the public waters when included in the act of incorporation, with leave to construct and operate a telegraph line over, under or upon the same, constitutes a special franchise grant direct from the State to the corporation. (*People ex rel. Harlem River & Port Chester R. R. Co.* v. *Tax Commissioners,* 215 N. Y. 507, 511.) A franchise which authorizes a company to use the public streets for the purpose of constructing, maintaining and operating therein tangible property used in its business " operates to create a franchise by which is vested in the corporation receiving it a perpetual and indefeasible interest in the land constituting the streets of a municipality." (*Ghee* v. *Northern Union Gas Co.* 158 N. Y. 510, 513.) Such a franchise is property which cannot be destroyed or taken away without compensation and survives even the dissolution of the corporation, by a repeal of its charter. (*People* v. *O'Brien,* 111 N. Y. 1.) These special franchises being property rights, must be either real or personal property and as they are interests in and appurtenant to land are real property, and are correctly so classified in the Tax Law of this State (Cons. Laws, chap. 60 [Laws of 1909, chap. 62], § 2, subd. 3),* and are taxable as all other real estate (Id. § 3).

The relator argues that because the subsequent license was granted to it by the United States government to construct, maintain and operate lines of telegraph through or over post roads, and over, under or across navigable streams or waters of the United States, the special franchise there-

---

* Now Tax Law, § 2, subd. 6, as amd. by Laws of 1916, chap. 323.— [REP.

782  People ex rel. Postal Tel.-C. Co. *v.* Bd. Tax Comrs.

First Department, February, 1918.          [Vol. 181.

tofore granted by the State became a nullity. This leads to a determination of the scope and effect of the Federal license, and to what extent the United States government could, under the Constitution, thus appropriate the public highways of a State, or the streets of a municipality, when the highways and streets were owned, constructed and maintained by the State or municipality. For if such power has been delegated to Congress the exercise of such power suspends and overrides all State statutes with which it is in conflict (*Pensacola Tel. Co.* v. *Western Union Tel. Co.*, 96 U. S. 1, 9), and the subject is effectively removed thereafter from State interference, for the Constitution of the United States and the laws made pursuant thereof are the supreme laws of the land. (U. S. Const. art. 6, cl. 2.) Congress has power " to regulate commerce with foreign nations and among the several States " (U. S. Const. art. 1, § 8, subd. 3), and " to establish post offices and post roads." (Id. subd. 7.) Pursuant to this authority Congress has provided by section 3964 of the United States Revised Statutes: " The following are established post-roads: All the waters of the United States, during the time the mail is carried thereon. All railroads or parts of railroads which are now or hereafter may be in operation. * * * All letter-carrier routes established in any city or town for the collection and delivery of mail matters," and by act of March 1, 1884, further provided: " That all public roads and highways while kept up and maintained as such are hereby declared to be post routes." (23 U. S. Stat. at Large, 3, chap. 9.) The words " post-roads " and " post routes " as above used are clearly intended to be synonymous. (*Western Union Tel. Co.* v. *Penn. R. R.*, 195 U. S. 540, 557; *Western Union Tel. Co.* v. *Richmond*, 224 id. 160, 165; *New England Telegraph Co.* v. *Town of Essex*, 206 Fed. Rep. 926, 931.) Therefore, Congress has made all the streets of New York city and the public roads, highways and navigable waters within this State post roads.

On the 24th of July, 1866, the Congress of the United States passed an act which, among other things, provided: " That any telegraph company now organized, or which may hereafter be organized under the laws of any State in this Union, shall have the right to construct, maintain, and operate

lines of telegraph through and over any portion of the public domain of the United States, over and along any of the military or post roads of the United States which have been or may hereafter be declared such by act of Congress, and over, under, or across the navigable streams or waters of the United States: *Provided,* That such lines of telegraph shall be so constructed and maintained as not to obstruct the navigation of such streams and waters, or interfere with the ordinary travel on such military or post roads." It was further provided: " That the United States may at any time after the expiration of five years from the date of the passage of this act, for postal, military, or other purposes, purchase all the telegraph lines, property, and effects of any or all of said companies at an appraised value  *  *  *. That before any telegraph company shall exercise any of the powers or privileges conferred by this act, such company shall file their written acceptance with the Postmaster-General of the restrictions and obligations required by this act." (14 U. S. Stat. at Large, 221, 222, chap. 230, §§ 1, 3, 4; U. S. R. S. § 5263 *et seq.*)

On July 26, 1884, the relator duly accepted the provisions of the act of 1866. It becomes necessary to determine the extent and limitations of the license thus acquired from the United States government. The United States, by the passage of the Post Roads Act, acquired no right to the fee of the streets or roads, nor any property right therein. To so hold would render the act unconstitutional. The streets and highways when owned by a State or municipality are, with respect to the United States, private property of which they could not be deprived except by due process of law, and upon a just compensation. (See U. S. Const. 5th Amendt.; State Const. art. 1, § 6.) The right, therefore, of the United States was to use such streets and highways for the transportation of the mails, in common with the public, freed from molestation or interference.

A State or municipality could close the street or highway, and the right of the United States to use the same as a post road would cease with the cessation of such use by the public. So long, however, as the street or highway was open to the public the State or municipality could not prevent its use by the United States as a post road. The United States govern-

ment can no more appropriate a street or highway which is owned by a State or municipality to the use of a telegraph company without the consent of the State or municipality, than it could take one of the public buildings so owned, and establish it as a post office without such consent. The cases which have been decided by the United States Supreme Court with respect to the rights of telegraph companies to use the post roads have related to the rights of such companies, incorporated in one State, to use the post roads, as declared by the above-mentioned statutes, in another State. It is not necessary to review these cases in detail; they have been collated and summarized in a recent opinion of that court (*Western Union Telegraph Co.* v. *Richmond*, 224 U. S. 160), which involved the right of a municipality to exact compensation for the right to use the public streets. The court said (p. 169): " The act of Congress of course conveyed no title and did not attempt to found one by delegating the power to take by eminent domain. (*Western Union Telegraph Co.* v. *Pennsylvania Railroad Co.*, 195 U. S. 540, 574.) It made the erection of telegraph lines free to all submitting to its conditions, as against an attempt by a State to exclude them because they were foreign corporations, or because of its wish to erect a monopoly of its own. (*Pensacola Telegraph Co.* v. *Western Union Telegraph Co.*, 96 U. S. 1.) It has been held to prevent a State from stopping the operation of lines within the act, by injunction for failure to pay taxes. (*Western Union Telegraph Co.* v. *Attorney General of Massachusetts*, 125 U. S. 530.) But except in this negative sense the statute is only permissive, not a source of positive rights. The inability of the State to prohibit the appellant from getting a foothold within its territory, both because of the statute and of its carrying on of commerce among the States, gives the appellant no right to use the soil of the streets, even though post roads, as against private owners or as against the city or State where it owns the land. (*St. Louis* v. *Western Union Telegraph Co.*, 148 U. S. 92, 101; S. C., 149 U. S. 465; *Richmond* v. *Southern Bell Telephone & Telegraph Co.*, 174 U. S. 761, 771; *Atlantic & Pacific Telegraph Co.* v. *Philadelphia*, 190 U. S. 160, 163; *Hudson County Water Co.* v. *McCarter*, 209 U. S. 349, 357.) "
In a later case (*Williams* v. *Talladega*, 226 U. S. 404) the

court said: " These cases, taken· together, establish the proposition that the privilege given under the terms of the act to use the military and post roads of the United States for the poles and wires of the company is to be regarded as permissive in character, and not as creating corporate rights and privileges to carry on the business of telegraphy, which were derived from the laws of the State incorporating the company, and that this permissive grant did not prevent the State from taxing the real or personal property belonging to the company within its borders, or from imposing a license tax upon the right to do a local business within the State." And the portion of the opinion quoted from the case of *Western Union Telegraph Co.* v. *Richmond* (*supra*) is reaffirmed in *Essex* v. *New England Telegraph Co.* (239 U. S. 313, 320).

Applying these principles to the case at bar, it follows that the right to occupy the streets and navigable waters within the limits of New York city was granted to the relator by the State and not by the United States government; that the license under the " Post Roads Act " gave the· relator the right to use these facilities, which had been granted by the State without the interference by the State with their use and enjoyment and further gave the relator the right to extend such facilities upon the post roads in other States for the transaction of its interstate commerce; that this permission by the United States gave to the relator no property rights in the street, but the State grant did, and the State has the right to tax all the property both real and personal within the State the same as it does the property of others. The so-called Federal license did not destroy the special franchises granted by the State but supplemented them; created no new rights in the streets, but insured the enjoyment of those granted by the State. It is not a franchise and hence was not and could not be included in those special franchises which have been taxed by the State Board of Tax Commissioners as a portion of the real estate of this company. There is nothing to the contrary in the case of *California* v. *Pacific R. R. Co.* (127 U. S. 1). Congress had incorporated a railroad company to build a railroad from the Missouri river to the Pacific ocean. Existing

786 People ex rel. Postal Tel.-C. Co. v. Bd. Tax Comrs.

First Department, February, 1918.        [Vol. 181.

corporations were allowed to accept the benefits of this act and connect their roads with the line and in extension thereof. The various Pacific railroad companies that were parties to this action accepted the act and constructed a portion of the line which connected with their lines. Therefore, a portion of their roads within the State of California were built under the State franchise and a portion under the United States franchise. The State Board of Equalization proceeded to assess a franchise tax based upon the entire line, and the United States Supreme Court held that the State of California had no power to tax the franchise granted by Congress and as all the franchises had been included, National as well as State, the entire assessment was void. In the case of *Central Pacific Railroad* v. *California* (162 U. S. 91) it appeared that the State Board of Equalization had only assessed the franchise granted by the State of California and the court held that valid, and said: " If the State franchise to be assessed were confined to the right to operate the road and take tolls, such a franchise was originally granted by the State to this company, and as such was taxable property. If the subsequent acts of Congress had the effect of creating a Federal franchise to operate the road, that merely rendered the State right subordinate to the Federal right, and did not destroy the State right nor merge it into the Federal right." (p. 127.)

Therefore, these cases relied upon by the relator are not authorities in support of its contention, but to the contrary.

Section 306 of the Tax Law* provides for the collection of certain taxes, including special franchise taxes, by sequestration, or by action at law, and hence the enforcement of these taxes in such a manner would not violate the " Post Roads Act." (*Western Union Telegraph Co.* v. *Massachusetts*, 125 U. S. 530, 554.)

The assessment was a valid exercise of the taxing power of this State.

The order in so far as appealed from and the findings inconsistent herewith will, therefore, be reversed and the assessments in the boroughs of Manhattan, The Bronx and Brooklyn confirmed, and the writ of certiorari dismissed, with costs to

---

* Since amd. by Laws of 1916, chap. 323.— [Rep.

the intervenor, to be taxed pursuant to section 294 of the Tax Law.

CLARKE, P. J., DOWLING, SMITH and SHEARN, JJ., concurred.

Order reversed, assessments confirmed and writ dismissed, with costs to intervenor. . Order to be settled on notice.