PEOPLE OF THE STATE OF NEW YORK ex rel. NIAGARA FALLS INTERNATIONAL BRIDGE COMPANY, Relator, *v.* THE STATE TAX COMMISSION, Respondent. ·

(Supreme Court, Niagara Special Term, June, 1918.)

**Tax Law, § 2, as amended by Laws of 1916, chap. 323 — taxes — definition of a " special franchise " — bridges.**

> Though the state may tax the right to maintain that portion of the Suspension bridge across the Niagara river at Niagara falls which extends from the easterly margin of the river to the centre thereof, which is the international boundary line, such right is not within the definition of a " special franchise " under section 2 of the Tax Law, as amended by chapter 323 of the Laws of 1916, but the bridge should be assessed by the local assessors as " land."

CERTIORARI proceeding to review assessment of relator's property as a special franchise.

Isaac S. Signor and Charles G. Signor, for relator.

B. C. Turner, Deputy Attorney-General, and Robert J. Moore, Corporation Counsel of Niagara Falls, for respondent.

SEARS, J. The state tax commission has assessed a special franchise against the relator, based upon the relator's ownership of that part of the so-called Suspension bridge across the Niagara river at Niagara falls, extending from the easterly margin of the river to the international boundary line. In this proceeding the relator attacks this assessment on three grounds: *first*, the relator contends that its right to cross the Niagara river does not fall within the definition of a special franchise contained in the Tax Law; *second*, the relator contends that if that statutory definition

includes the relator's right to cross the Niagara river the statute was beyond the power of the state legislature, because, according to its contention, the federal government alone has the right to permit or prohibit the maintenance of the bridge; *third,* the relator contends that the assessment is excessive. By stipulation between the relator and the respondent, the question relating to the alleged excessiveness of the assessment has been reserved for consideration until after the other questions have been determined. The only questions before the court at this time arise on the contentions of the relator numbered first and second above.

The second contention is best considered first. It is, stated simply, that the right to cross that part of the Niagara river which lies within the state of New York is not derived from the state of New York and cannot be taxed by it. The Niagara river is concededly navigable. *Matter of State Reservation Commissioners,* 37 Hun, 537. The international boundary is the center of the stream but as to that part of the river within the state of New York the state has the title to the land under the waters of the river and governmental control of such land. This control, nevertheless, is subject to the supervision of the United States in so far as commerce is concerned, but this supervision does not give to the United States government as against the state of New York authority to construct a bridge over the waters of the river, nor can the United States government take the state's property in the bed of the river for that purpose. The bridge in question was built primarily for interstate and foreign commerce but this fact does not give the United States any other or greater supervision over it than it otherwise had. *People* v. *International Bridge Co.,* 223 N. Y. 137. In *People ex rel. Harlem River*

*& Port Chester R. R. Co.* v. *State Board of Tax Commissioners,* 215 N. Y. 507, it was held that the franchise or right of a railroad company to cross the navigable waters of the Bronx and Hutchinson rivers granted by the state of New York was assessable by the state as a special franchise, and in *People of the State of New York* v. *International Bridge Company, supra,* the right of the state to enact legislation in respect to a bridge across the Niagara river was sustained.

From the reasoning in the opinions in these two cases and in the authorities cited in the latter case, it follows that the right to maintain the New York portion of the bridge here in question is not dependent solely upon federal authority and therefore the contention of the relator in this respect is not sound.

The first contention of the relator requires an examination of the statutes incorporating the relator and of the provisions of the Tax Law defining a " special franchise." The relator was incorporated by chapter 104 of the Laws of 1846 of this state, which act was amended by chapter 622 of the Laws of 1853. By the act of 1846 the relator was given power to construct, maintain and manage a bridge across the Niagara river at or near Niagara falls. No mention of a railroad is contained in this act. The act of 1853, however, gave the relator authority to use and distribute stock for the purpose of building and completing a railroad and carriage bridge across the Niagara river, and, further, to enter into contracts with individuals and railroad companies with reference to the terms of crossing locomotives and cars, passengers and freight over said railroad bridge, and the construction, repairs, insurance and maintenance of the same. The relator has erected three different bridges, the first one in 1848; the second one, taking the place of the first, in

1855; and the third one, taking the place of the second, in 1896. The first bridge was not a railroad bridge. The second and third bridges each had two floors, the lower floor being retained in the control of the relator and used for pedestrian and vehicular traffic and the upper floor being leased to a railroad company or companies for the purpose of constructing a railroad or railroads thereon and operating locomotives and cars over the same. The abutments of the present bridge are outside of the bounds of the Niagara river and rest upon land owned by the relator. No power is given to the relator by any act of the state of New York to operate a railroad over the structure, nor has the company ever attempted so to do.

The definition of a special franchise is contained in section 2, subdivision 6, chapter 323 of the Laws of 1916. The pertinent parts of the section are as follows:

" The terms ' land,' ' real estate,' and ' real property,' as used in this chapter, include the land itself above and under water, all buildings and other articles and structures, substructures and superstructures, erected upon, under or above, or affixed to the same; * * * all bridges, * * *; all surface, underground or elevated railroads, including the value of all franchises, rights or permission to construct, maintain or operate the same in, under, above, on or through, streets, highways or public places; all railroad structures, substructures and superstructures, tracks and the iron thereon; * * * all mains, pipes and tanks laid or placed in, upon, above or under any public or private street or place for conducting steam, heat, water, oil, electricity, or any property, substance or product capable of transportation or conveyance therein or that is protected thereby, including the value of all franchises, rights, authority or permission to

construct, maintain or operate in, under, above, upon or through, any streets, highways or public places, any mains, pipes, tanks, conduits or wires, with their appurtenances, for conducting water, steam, heat, light, power, gas, oil or other substance, or electricity for telegraphic, telephonic or other purposes; * * *. A franchise, right, authority or permission specified in this subdivision shall for the purpose of taxation be known as a 'special franchise.' * * * A special franchise shall be deemed to include the value of the tangible property of a person, co-partnership, association or corporation situated in, upon, under or above any street, highway, public place or public waters in connection with the special franchise. The tangible property so included shall be taxed as a part of the special franchise.''

This section limits special franchises to two classes of rights in public highways and places: *first,* railroad rights; and, *second,* rights for the conveying of gas, water, electricity and the like. While bridges are specifically included in the definition of land, the section does not mention franchises, rights or permissions to construct, maintain or operate bridges even though across public streets or public places. Bridges *not in connection with special franchises,* that is, *not in connection with* rights to operate a railroad within the limits of public streets, highways or public places, or with rights to convey gas, electricity, etc., within such limits, are within the definition of land but not within the definition of a special franchise. A bridge may be a part of a special franchise but the fundamental special franchise, that is, the right, authority or permission specified in the subdivision, must first be present. The bridge must be in *connection with* such special franchise. The case of *People ex rel. Harlem River & Port Chester R. R. Co.* v. *State*

*Board of Tax Commissioners,* 215 N. Y. 507, is a familiar example of a situation where a railroad special franchise to cross a river also included the tangible property of the same company, to wit, the bridge upon which the railroad was operated. But the trouble with the assessment against the relator of a special franchise in the case at bar lies in the fact that the relator has no franchise, right, authority or permission either to construct, maintain or operate a railroad or a line of mains, pipes or tanks for the conducting of gas, water, electricity or the other substances or energies mentioned in the statute. The company operating its railroad across this bridge, which the proof shows to be the Grand Trunk Railway Company, doubtless owns and enjoys a special franchise, and such tangible property on the bridge as belongs to it would be a part of its special franchise, but the bridge itself and all the property of relator is in a different ownership and the relator has no special franchise in connection with which its tangible property can be assessed.

The inclusion of the tangible property in connection with a special franchise as a part of the special franchise is for convenience in assessment, the tangible going with the intangible. But here there being no assessable intangible right the bridge should be assessed as land by the local assessors.

I am of the opinion, therefore, that while the state has ample power to tax the relator's right to cross the Niagara river if it desires to do so, the present Tax Law does not include within its definition of a special franchise such right of the relator. Let an order be entered granting the prayer of the relator's petition, with costs.

Ordered accordingly.