THE PEOPLE OF THE STATE OF NEW YORK ex rel. GRAND TRUNK RAILWAY COMPANY OF CANADA, Respondent, *v.* JOHN F. GILCHRIST and Others, Constituting the State Tax Commission of the State of New York, Appellants.

Fourth Department, May 4, 1927.

Taxation — special franchise tax — crossing by relator of Niagara river, a navigable stream, on bridge of Niagara Falls International Bridge Company — relator at time of making of 1923 assessment was Canadian railroad corporation authorized to do business here — lease of upper floor of bridge obligates relator to provide ties and equipment, but gives title in such tangible property to relator — right to operate its trains on said bridge constitutes special franchise and is real property for purposes of taxation within meaning of Tax Law, § 2, subd. 6.

The relator, a Canadian corporation with authority to transact business in this State, operates its railroad over the International Bridge at Niagara Falls under a lease from the owners of the bridge of the upper floor thereof which specifically

requires the relator to lay the tracks and ties on the bridge, and provides that said tracks and ties shall be the property of the relator. The tangible property mentioned in connection with the relator's right to operate its trains over the Niagara river on said bridge constitutes a special franchise taxable under subdivision 6 of section 2 of the Tax Law. The Niagara river beneath the International Bridge is a navigable stream and the mere fact that the current prevents its actual navigation does not make it a non-navigable stream.

APPEAL by the defendants, John F. Gilchrist and others, from a final order or judgment of the Supreme Court, entered in the office of the clerk of the county of Niagara on the 2d day of March, 1926, upon the report of a referee.

Said final order or judgment adjudges that the crossing of the Niagara river on the bridge of the Niagara Falls International Bridge Company does not constitute a special franchise and that the assessment therefor, against the relator, is illegal and void.

*Albert Ottinger,* Attorney-General [*Alexander L. Saul* and *Frederic J. Merriman, Deputies Attorney-General,* of counsel], for the appellants.

*Moot, Sprague, Brownell & Marcy* [*S. Fay Carr* of counsel], for the respondent.

CLARK, J. The State Tax Commission appeals from so much of an order, entered in the Niagara county clerk's office on the report of a referee, which directed the cancellation of an assessment made by the State Tax Commission upon the special franchise occupation by relator of the suspension bridge over the Niagara river at the city of Niagara Falls, N. Y.

The question to be determined is whether or not the right, authority or permission by which relator crosses Niagara river with its trains on the suspension bridge at that point comes from the State of New York, or any municipality within said State, as claimed by appellant, or whether such right and permission is derived from the companies that own the bridge, as claimed by relator.

The Grand Trunk Railway of Canada, at the time of the making of the assessment of 1923, which is the subject of this controversy, was a railroad corporation organized and existing under the laws of the Dominion of Canada for the purpose of carrying on a general railroad business, and it is authorized to carry on such business for the transportation of passengers and freight within the State of New York.

At the city of Niagara Falls there is and has been for many years a bridge extending across the Niagara river from the city of Niagara Falls, N. Y., to Niagara Falls in the Province of Ontario.

This bridge is owned by two separate and distinct corporations, one a New York corporation and the other a Canadian corporation. These two corporations were organized many years ago for the purpose of constructing, maintaining and operating a bridge across the Niagara river at or near Niagara Falls, and to fix the rates of toll for the use of said bridge.

These corporations have erected three different bridges at that point; the first in 1848, the second replacing the first in 1855, and the third bridge was erected in 1896, which replaced the one which had been erected in 1855. The second and third bridges had two floors, the upper floor being leased for railroad purposes, and the lower floor being used for vehicles and pedestrians, the bridge companies retaining control over that portion of the bridge. The abutments of the bridge rest upon lands owned by the bridge companies, and they do not now, nor have they ever operated or attempted to operate a railroad over the bridge.

By chapter 622 of the Laws of 1853 the New York corporation, the Niagara Falls International Bridge Company, was given authority in union with the Canadian corporation, the Niagara Falls Suspension Bridge Company of Canada, to enter into any contract with " any individual, railroad company or railroad companies " with reference to crossing said bridge with locomotives and cars, and to carry passengers and freight over and across said bridge.

In 1853 these bridge companies leased to the Great Western Railway of Canada, relator's predecessor in interest, the upper floor of the bridge, which had been reconstructed for the accommodation of railway trains, for the passage of railroad trains and locomotives over said structure, and since that time the relator and its predecessors in interest have used the upper floor of said bridge and bridges subsequently erected at said point to replace the original bridge, for general railroad purposes, and passenger and freight trains in charge of train crews of relator and hauled in both directions across said bridge by locomotives owned by relator, have made daily use of said bridge down to and subsequent to the time of said assessment.

Under the first lease dated October 1, 1853, the Great Western Railway Company of Canada, relator's predecessor in interest, agreed to an annual rental of $50,000 for the use of the upper floor of said bridge. In 1896 the bridge was rebuilt, and in March of that year a new agreement was made and entered into between the bridge companies and the relator which provided for the use by the railroad company of the upper floor of the bridge for its railroad purposes, and that the lease of 1853 between the bridge companies and the Great Western Railway Company of Canada,

was reaffirmed, excepting as specifically changed by the new lease of 1896.

By the terms of the new lease the rent was increased to $59,000 per year, the bridge companies agreed to complete the upper floor of the bridge and the approaches thereto, and the lease provided: " But the Grand Trunk [relator] shall, at their own cost and expense, furnish the necessary rails, needlebeams, cross ties and guard timbers required for the railway tracks thereupon and put down the same.".

It further provided that the Grand Trunk should be entitled to the old girders of the approaches and the old rails which might be discarded from the upper floors of the present (old) bridge and its approaches.

In 1918 it was necessary to strengthen the bridge, and a new agreement was entered into between the bridge companies and the Grand Trunk Railway Company of Canada, which agreement was dated May 23, 1919. By the terms of this last agreement or lease the rental was increased to $80,000 per year, and the lease further provided that said agreement, together with the prior agreements beginning October 1, 1853, constituted the contracts under which the relator was to operate its trains over the upper deck or floor of the bridge.

It will be seen that under the various leases the relator was obliged to furnish the rails, ties, etc., for the upper floor of the bridge, and under the last lease dated May 23, 1919, which was in effect when this assessment was made, is this clause: Paragraph 10. " The Grand Trunk shall be entitled to all rails, guard rails, ties, tie-plates, spacers, expansion joints, tracks, and other track equipment now or hereafter placed upon the upper floor of the said bridge and approaches and the same shall remain the property of the Grand Trunk."

At the time of the assessment in question relator was not only using the upper floor of said bridge for the hauling of its trains over Niagara river in the prosecution of its railroad business, but the ties, rails and all the ordinary equipment for a railroad on the upper floor of the bridge was not only furnished by relator, but by the express terms of its lease with the bridge companies it owned this tangible property. The bridge companies had no interest whatever in it.

Under subdivision 6 of section 2 of the Tax Law (as amd. by Laws of 1916, chap. 323) such property was taxable as real property, as part of a special franchise. That subdivision, so far as material to this transaction, is as follows:

" The terms ' land,' ' real estate,' and ' real property,' as used in this chapter, include the land itself above and under water,

all buildings and other articles and structures, sub-structures and super-structures, erected upon, under or above, or affixed to the same; * * * all bridges * * *; all surface, under ground or elevated railroads, including the value of all franchises, rights or permission to construct, maintain or operate the same in, under, above, on or through, streets, highways or public places; all railroad structures, sub-structures and super-structures, tracks and the iron thereon; * * * all mains, pipes and tanks laid or placed in, upon, above or under any public or private street or place for conducting steam, heat, water, oil, electricity or any property, substance or product capable of transportation or conveyance therein or that is protected thereby, including the value of all franchises, rights, authority or permission to construct, maintain or operate, in, under, above, upon, or through, any streets, highways or public places, any mains, pipes, tanks, conduits or wires, with their appurtenances, for conducting water, steam, heat, light, power, gas, oil or other substance, or electricity for telegraphic, telephonic or other purposes; * * *. A franchise, right, authority or permission specified in this subdivision shall for the purpose of taxation be known as a ' special franchise.' A special franchise shall be deemed to include the value of the tangible property of a person, copartnership, association or corporation situated in, upon, under or above any street, highway, public place or public waters in connection with the special franchise. The tangible property so included shall be taxed as a part of the special franchise. * * * ''

This tangible property owned by the railroad company and located on the upper floor of the bridge at the time this assessment was made, was taxable as real property. (*People ex rel. N. Y. & Harlem R. R. Co.* v. *Commissioners of Taxes*, 101 N. Y. 322.)

The tangible property above referred to, in connection with relator's right to operate its trains over Niagara river on said bridge, constituted a special franchise and is real property for purposes of taxation. (*People ex rel. Jamaica Water Supply Co.* v. *State Board of Tax Commissioners*, 196 N. Y. 39.)

The bridge companies were never given power by the Legislature of the State of New York to operate a railroad over the bridge at Niagara Falls, and they have never attempted such operation, but the relator operates a railroad over said structure, and the right to conduct such operations within the State of New York and over a stream like Niagara river is a special franchise taxable under the provisions of subdivision 6 of section 2 of the Tax Law (as amd. by Laws of 1916, chap. 323), as above stated.

The referee found that the relator at the time of making the

24  People ex rel. Grand Trunk Railway Co. *v.* Gilchrist.

Fourth Department, May, 1927.                    [Vol. 221

assessment and prior and subsequent thereto, was engaged in operating a railroad and conducting a general railroad business in that part of the State of New York lying between the international boundary line and the station of the New York Central and Lehigh Valley Railroad Companies at Niagara Falls, and in the conducting of said railroad business it exercised privileges, powers, rights and authorities conferred upon railroad corporations by the State of New York, and that the State had the same jurisdiction over the relator that it had over all other railroad corporations owning, maintaining or operating railroads in the State of New York, and that the statutes of New York applicable to foreign corporations carrying on a railroad business in this State applied to the relator.

That being so, the relator was at the time of the assessment exercising a right that could not be conferred by the owners of the bridge, but only by the State of New York.

Relator owned the tangible property, rails, etc., on the top floor of the bridge, and the use of that property over a navigable stream for railroad purposes, was exercising a special franchise that could only be granted by the State, and relator should bear its share of the burden of State government for exercising that privilege.

The Niagara river is a navigable stream. (*People ex rel. Niagara Falls International Bridge Co.* v. *State Tax Commission*, 103 Misc. 648.) The fact that just at the point of the bridge, because of the proximity of the "world renowned rapids flowing under said bridge," the river is not navigable, as found by the referee, does not change the character of the stream as a navigable river.

In *Matter of Commissioners State Reservation at Niagara* (37 Hun, 537, 547) Judge Bradley, writing, said: "The fact that at the particular place in question the river is not navigable by reason of the interruption produced by the falls, does not qualify or distinguish it in that locality as a public river from its general character."

The international boundary line between the State of New York and the Dominion of Canada is the center of Niagara river, and from the center of the stream easterly to the east bank thereof the State owns the land under the water of the river and controls such lands.

The relator is exercising the right to cross this portion of the river in New York State for its railroad purposes. The bridge companies, while taxable for the bridge as land, have been held not liable for taxation for exercising a special franchise, for they do not operate the railroad. (*People ex rel. Niagara Falls International Bridge Co.* v. *State Tax Commission, supra.*) But the relator operating its railroad over a navigable stream, and using its own tangible

People ex rel. Grand Trunk Railway Co. *v.* Gilchrist.   25

App. Div. 19]        Fourth Department, May, 1927.

property on the bridge structure, is liable for taxation of the special franchise. (*People ex rel. Harlem River & Pt. Chester R. R. Co. v. State Board of Tax Commissioners*, 215 N. Y. 507; *People ex rel. N. Y. C. R. R. Co. v. State Tax Commission*, 239 id. 183.)

Relator claims that it derives its right to cross the river on this bridge under its leases from the bridge companies and not from the State of New York. The State alone could grant the right to cross a navigable river when it owns the lands beneath the waters. Relator has operated its railroad all these years by favor of the public authorities, a favor not enjoyed by citizens generally, and under a claimed right from corporations having no right to grant it.

Relator relies on the cases of *Matter of New York Railways Co., Williamsburgh Bridge* (172 App. Div. 128) and *People ex rel. Interborough Rapid Transit Co. v. State Board of Tax Commissioners* (126 id. 610; affd., 195 N. Y. 618) to sustain its contention.

These cases are not controlling for the reason that in the *Interborough Rapid Transit Company* case the subway through which it operated its trains was owned by the city of New York and was exempt from taxation (Tax Law, § 4, subd. 3), and the court held that the owner being exempt, the tenant or occupant must also be exempt.

In the *Williamsburgh Bridge Case* (172 App. Div. 128) the tracks over which the railway operated its cars were owned by the city. The railway company did not operate its cars in connection with the ownership of any tangible property, such as tracks, rails, etc., and it was held that its operation did not constitute a special franchise within the meaning of subdivision 3 of section 2 of the Tax Law.

In the case at bar relator exercised its right to cross a navigable stream in the transaction of its general railroad business, but in connection with its ownership of tangible property, ties, rails and similar equipment, over which it operates its trains, and these rights so used constitute a special franchise. (*People ex rel. United Natural Gas Co. v. Priest*, 152 App. Div. 249.)

The case of *People ex rel. Rutland R. R. Co. v. State Tax Commission* (243 N. Y. 543), cited by relator, is not an authority to sustain its contention. In that case the assessments were canceled because the crossings were over streams that were not navigable, while here the stream crossed by relator in its railroad business is navigable and a public place within the meaning of the Tax Law.

The portion of the order appealed from should be reversed, and the assessment as originally made reinstated and confirmed, with costs to the appellant.

Finding of fact No. 15, and conclusions of law Nos. 1, 8, 9 and 10, disapproved and reversed.

The following requests to find, made by appellant and refused by the learned referee, are found by this court:

Proposed findings of fact Nos. 7, 9, 10, 18, 19, 26, 27, 28, 33 and 39.

Proposed conclusions of law Nos. 2, 4, 6, 7, 10, 11, 15, 22 and 24.

All concur. Present — HUBBS, P. J., CLARK, CROUCH, TAYLOR and SAWYER, JJ.

Order so far as appealed from reversed on the law and facts and assessment as originally made reinstated and confirmed, with costs to the appellant. Certain findings of fact and conclusions of law disapproved and reversed and new findings made.