THE PEOPLE OF THE STATE OF NEW YORK ex rel. GRAND
TRUNK RAILWAY COMPANY OF CANADA, Appellant, *v.*
JOHN F. GILCHRIST et al., Constituting the State Tax
Commission, Respondent.

Tax — franchise   tax — railroads — bridges — operation   of
railroad on bridge over navigable stream under authorized
grant by bridge companies not a special franchise — assessment
upon right to operate railroad over bridge set aside — permis-
sion of State that relator operate its railroad within State
confers no special franchise — consent of State to use of bridge
for operation of railroad part of privilege granted to bridge
company.

1. A right derived from the State to operate a railroad above a
navigable stream is a special franchise which may be taxed, but opera-
tion of a railroad on a bridge over a navigable stream, not under a
permission or authority granted by the State to the railroad company
but under a right or permission granted to it by the bridge companies,
acting under authority derived from the State, is not a special franchise
within the meaning of the Tax Law and an assessment placed upon
the right to so operate its railroad must be set aside.

2. An argument that the relator may not claim that its operation
of a railroad on the bridge is not derived from permission of the State,
since without permission to exercise its corporate powers within the
State its operation would be illegal, disregards the distinction between
a general franchise and a special franchise.   A mere permission of the
State to the relator to operate its railroad within the State in itself
confers no special right or privilege to encroach upon the rights of the
public in a highway or public place, and though the State has con-
sented to the use of the bridge for operation of a railroad, that consent
is part of the privilege granted to the bridge company for the con-
struction of a bridge to be used for that purpose.   The railroad com-
pany has received no rights from the State except the right to exercise
its corporate powers.

*People ex rel. Grand Trunk Ry. Co.* v. *Gilchrist,* 221 App. Div. 19,
reversed.

(Argued February 21, 1928; decided May 1, 1928.)

7

APPEAL from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered May 4, 1927, which reversed an order of Special Term vacating a franchise tax assessment and reinstated and confirmed said assessment.

*S. Fay Carr* for appellant. Appellant's sole right, authority or permission to cross the Niagara river is derived from its agreements with the companies owning the bridge across the Niagara river. (*People ex rel. Met. Street Ry. Co. v. Tax Comm.*, 174 N. Y. 417; *Schinzel v. Best*, 45 Misc. Rep. 455; 109 App. Div. 917; *Matter of New York Rys. Co.*, 172 App. Div. 128; *People ex rel. Interborough Rapid Transit Co. v. Tax Comm.*, 126 App. Div. 610; 195 N. Y. 618; *People ex rel. Niagara Falls Internat. Bridge Co. v. Tax Comm.*, 103 Misc. Rep. 648; *People ex rel. Mayor, etc., of New York v. Assessors*, 111 N. Y. 505; *Niagara Falls Internat. Bridge Co. v. Grand Trunk Ry. Co.*, 212 App. Div. 705; 241 N. Y. 85.) Appellant's right to operate trains across the Niagara river on the bridge owned by the bridge companies does not proceed from any authority to carry on ordinary railroad transportation business within the State of New York. (*People ex rel. Met. Street Ry. Co. v. Tax Comm.*, 174 N. Y. 417; *People ex rel. N. Y. C. R. R. Co. v. Woodbury*, 203 N. Y. 167; *People ex rel. Long Island R. R. Co. v. Tax Comm.*, 148 App. Div. 751; 207 N. Y. 683; *Niagara Falls Internat. Bridge Co. v. Grand Trunk Ry. Co.*, 212 App. Div. 705; 241 N. Y. 85.)

*Albert Ottinger, Attorney-General (Frederic J. Merriman* and *Alexander L. Saul* of counsel), for respondents. The right to construct, maintain and operate a railroad over a navigable river, including the value of the tangible property used in connection therewith, constitutes a special franchise. (*People ex rel. H. R. & P. C. R. R. Co. v. State Board*, 215 N. Y. 507; *People ex rel. N. Y. C. R. R. Co. v. Tax Comm.*, 239 N. Y. 183; *People ex rel.*

*East River T. R. R. Co.* v. *Tax Comm.*, 160 App. Div. 771.) The relator in constructing, maintaining and operating a railroad over and above a navigable river exercises that kind of a right, authority or permission in connection with the ownership of physical property, defined in article 1, section 2, subdivision 6, of the Tax Law as a special franchise. (*People ex rel. Internat. Bridge Co.* v. *Tax Comm.*, 239 N. Y. 631; *People ex rel. N. Y. C. R. R. Co.* v. *Woodbury*, 203 N. Y. 167; *N. Y., L. & W. R. R. Co.* v. *Roll*, 32 Misc. Rep. 321.)

LEHMAN, J.    The relator, Grand Trunk Railway Company of Canada, is a railroad corporation organized under the laws of the Dominion of Canada. It maintains and operates a railroad which crosses the Niagara river upon a bridge which was constructed by Niagara Falls Suspension Bridge Company, a Canadian corporation, and Niagara Falls International Bridge Company, a New York corporation.

The Niagara river is a navigable stream forming part of the boundary between the United States and Canada. The State of New York might grant or withhold the privilege or right to construct, maintain and operate a bridge or other crossing above a navigable stream within its own territory. The right to construct a bridge across a navigable boundary stream could be granted only by the action of both abutting sovereignties. The State of New York, by the law which created the Niagara Falls International Bridge Company (Laws of 1846, chap. 104), granted to that corporation the right to construct and operate a bridge across the Niagara river. In association with the Canadian corporation, which had received similar powers in its domicile, Niagara Falls International Bridge Company constructed the bridge. The upper floor of the bridge was designed to pass railroad trains with locomotives, and the lower floor was designed for carriages, for pedestrians and for animals.

100 People ex rel. Grand Trunk Ry.Co. v. Gilchrist.

[248 N. Y. 97]     Opinion, per Lehman, J.     [May,

The two bridge companies had no power to maintain or operate a railroad across the bridge, or that part of it lying within the State of New York; but by chapter 622 of the Laws of 1853 the Niagara Falls International Bridge Company was given full power and authority, by itself or in union with the Niagara Falls Suspension Bridge Company of Canada West, to enter into any contract or agreement with any individual, railroad company or railroad companies, with reference to the terms of crossing locomotives and cars, passengers and freight over said railroad bridge, and the construction, repairs, insurance and maintenance of the same, upon such terms and conditions, and for such time or times, as may be agreed upon by and between the parties. Accordingly in October, 1853, the two bridge companies jointly agreed with the Great Western Railway Company in Canada West, the predecessor in title and interest of the relator, to lease to said company the railroad floor and structure.

Since that time the bridge has from time to time been altered and reconstructed, and other agreements have been made between the bridge companies and the relator or its predecessor in title. The relator still occupies the railroad floor of the bridge under lease from the bridge companies. Under the terms of the contract it is provided that the " Grand Trunk shall be entitled to all rails, guard rails, ties, tie plates, spacers, expansion joints, tracks and other track equipment now or hereafter placed upon the upper floor of the said bridge and approaches, and the same shall remain the property of the Grand Trunk." The relator operates its railroad within the State of New York from a point on the bridge, above the boundary line of the State, to the Lehigh Valley railroad passenger station located about three hundred yards easterly from the easterly end of the bridge structure. A special franchise tax assessment, which the relator now attacks, has been placed upon the " franchise right

or permission of the relator to construct, maintain or operate its railroad above the Niagara River."

A right derived from the State to operate a railroad above a navigable stream is unquestionably a special franchise.   The State in such case has granted a special privilege in a highway or public place which is not enjoyed by all the people of the State.   Such a right, permission or privilege may be taxed.   (Tax Law [Cons. Laws, ch. 60], section 2; *People ex rel. H. R. & P. C. R. R. Co.* v. *Tax Commissioners*, 215 N. Y. 507; *People ex rel. Metropolitan Street Railway Co.* v. *Tax Commissioners*, 174 N. Y. 417.)   The relator in this case operates its railroad on a bridge over the Niagara river, not under a permission or authority granted by the State to it, but under a right or permission granted to it by the bridge companies acting under authority derived from the State.   The question is whether right or permission so derived is a special franchise within the meaning of the Tax Law.

A railroad corporation may not exercise its corporate powers within this State, except by permission or authority of the State.   The lease by the bridge companies to the relator of the railroad floor of the bridge could not confer upon the relator any corporate power to operate its railroad within the State.   It is said that the railroad company may not claim that its right to operate a railroad on the bridge is not derived from permission of the State, since without such permission its operation would be illegal.   That argument disregards the distinction between a general franchise and a special franchise.

" The general franchise of a corporation is its right to live and do business by the exercise of the corporate powers granted by the state.   When a right of way over a public street is granted to such corporation, with leave to construct and operate a street railroad thereon, the privilege is known as a special franchise, or the right to do something * * * which, except for the grant, would be a trespass."   (*People ex rel. H. R. & P. C. R. R. Co.* v.

*Tax Commissioners,* 215 N. Y. 507.)   A mere permission
of the State to the relator to operate its railroad within
the State in itself confers upon the relator no special
right or privilege to encroach upon the rights of the
public in a highway or public place.   At most it is
equivalent to a general franchise.   Without lease or per-
mission from the bridge companies, the relator's operation
of its railroad on the bridge over the Niagara river would
constitute a trespass even though the State had expressly
conferred a corporate power upon the relator to construct
a railroad across public places and waters.   After the
relator acquired from the bridge companies the right or
privilege to place its tracks upon the bridge, the operation
by the relator was legal without further grant or authority
from the State, except permission to exercise its general
corporate powers within the State.   Unless we find, there-
fore, that the permission or privilege derived from the
contract made with the bridge companies constitutes a
special franchise within the definition of the Tax Law,
the assessment must be set aside.

If the exercise by the relator of its corporate franchises
in a public place is not based upon authority granted by
the State; if it does not rest upon public favor rather
than private right, the relator enjoys no special franchise.
(*People ex rel. N. Y. Central R. R. Company* v. *Wood-
bury,* 203 N. Y. 167; *People ex rel. N. Y. C. & H. R.
R. R. Company* v. *Friest,* 206 N. Y. 274; *People ex rel.
Hudson & M. R. R.* v. *Tax Comrs.,* 203 N. Y. 119; *People
ex rel. Long Island R. R.* v. *Tax Comrs.,* 148 App. Div.
751; affd., on opinion below, 207 N. Y. 683.)   The State
granted to the Niagara Falls International Bridge Com-
pany the authority to construct a bridge across the
Niagara river and to enter into a contract with a railroad
company or companies for the operation of a railroad.
The bridge company was not authorized to operate a
railroad across its bridge, but it was given the right to
grant such privilege to another for its own profit.   The

right of the bridge company to construct a bridge over a navigable river and to contract for its own profit with a railroad company for the operation of a railroad across the bridge, is a special privilege or right granted by the State to do an act on public property which would otherwise be illegal, even though it may be that the right or privilege granted to the bridge company is not taxable at the present time as a special franchise because it does not fall strictly within the legislative definition of section 2 of the Tax Law. The question is not here presented whether the Legislature might not amend its definition of a taxable special franchise so as to include all the rights conferred upon the bridge company. If the State taxed as a special franchise the rights granted by it to the bridge company, it would hardly be claimed that the right of the railroad company to operate a railroad on the bridge constituted another special franchise.

By statute, the Legislature has fixed the conditions under which the bridge might be constructed and the purposes for which it might be used. The operation of the railroad over the bridge is in accordance with the authority granted by the State to the bridge company. From such operation the bridge company realizes some of the profits derived from the privilege created by the State. After the bridge was constructed upon the conditions fixed by the State, the bridge company, and not the State, could grant or withhold permission to use the bridge for railroad operation. The State did not and could not thereafter grant to another a special franchise which involved a use of the bridge. The State did not intrust to the bridge company power in its discretion to confer upon a railroad company the consent of the State to the operation of a railroad across the Niagara river. It conferred upon the bridge company the right to build the bridge and to grant the use of it for railroad purposes to a railroad corporation. The bridge company's privileges are derived from the State. It is

104   People ex rel. Grand Trunk Ry. Co. v. Gilchrist.

[248 N. Y. 97]   Dissenting opinions, per Crane and Andrews, JJ. [May,

entitled to the benefit from the authorized use of a public place. The railroad's rights are derived from grant of the bridge company upon stipulated payment to that company.

Though the State has consented to the use of the bridge for operation of a railroad, that consent is part of the privilege granted to the bridge company for the construction of a bridge to be used for that purpose. The railroad company has received no rights from the State except the right to exercise its corporate powers. Since it has received no permission from the State to operate a railroad over the Niagara river, its rights, derived from the bridge company by virtue of the privilege granted to the bridge company, constitute no special franchise.

The order of the Appellate Division should be reversed and that of the Special Term affirmed, with costs in the Appellate Division and in this court.

Crane, J. (dissenting). I dissent. If the State had granted to the railroad directly consent to operate its road over the bridge and river it would have been a special franchise. The railroad cannot cross without such consent. The source of authority is the State. The railroad has obtained such consent indirectly through the bridge company, and I can see no difference between the consent thus obtained and the consent directly given to the railroad by the State. The railroad runs over the river on a bridge by consent and authority of the State in either case. As it must pay a franchise tax in the one instance, why not in the other?

Andrews, J. (dissenting). A special franchise is defined as the franchise, right or permission to construct, maintain or operate a railroad above a public place. The Niagara river is such a public place. The relator maintains and operates a railroad above it.

Does it do so by reason of authority granted by the

State where without such authority such action would be illegal? ( *People ex rel. N. Y. C. & H. R. R. R. Co.* v. *Priest,* 206 N. Y. 274.) Does it do so by public favor? ( *People ex rel. N. Y. C. R. R. Co.* v. *Woodbury,* 203 N. Y. 167.) If it does not, there is no special franchise. ( *People ex rel. Hudson & M. R. R.* v. *Tax Comrs.,* 203 N. Y. 119; *People ex rel. Long Island R. R.* v. *Tax Comrs.,* 148 App. Div. 751; affd., on opinion below, 207 N. Y. 683.)

Chapter 104 of the Laws of 1846 incorporated the Niagara Falls International Bridge Company, authorized it to purchase or condemn necessary lands on this side of the boundary line and to build a toll bridge across the river for pedestrians and vehicles. A similar act was passed in Canada and the bridge has been built and operated for many years. Under the present definition of the statute this did not confer a special franchise. It is not the right, the authority or the permission specified in section 2 of the Tax Law.

By chapter 622 of the Laws of 1853, however, the corporation was empowered to contract with a railroad corporation with reference to terms upon which the latter might operate trains over the bridge. This statute impliedly authorized the bridge company to so construct the bridge as to be suitable for that purpose. In pursuance of this act the corporation built an upper deck to accommodate engines and trains.

I do not think this act conferred a special franchise upon the bridge company. The words of the statute are permission to " construct, maintain or operate " railroads over a public place. Certainly the corporation was never authorized to operate a railroad itself across the river. Probably it might lay rails on the structure. That may be implied from the fact that it was to build a railroad bridge. But I do not think the mere placing of rails thereon comes fairly within the meaning of the phrase " construct * * * railroads." It never, therefore,

106 People ex rel. Grand Trunk Ry. Co. *v.* Gilchrist.

[248 N. Y. 97]    Dissenting opinion, per Andrews, J.    [May,

itself obtained a special franchise, but it might grant the right to maintain and operate railroads across the bridge to others. It did so in October, 1853. It then leased to the Great Western Company of Canada the upper deck for the passage of trains and locomotives. The relator stands in the place of the original lessee.

As an original proposition the relator might not have constructed and operated a railroad bridge across the Niagara river without permission from the State. Had such permission been granted to it there would be a special franchise — permission to construct and operate a railroad above a public place. (*People ex rel. H. R. & P. C. R. R. Co.* v. *Tax Comrs.*, 215 N. Y. 507.) It seems to me that this is precisely what the act of 1853 did by implication. It said, " you may lease to some railroad and give it permission to operate its trains over your bridge. The lease will evidence our consent that it may do so." Consent of the State was required. It need not be express. It is no defense where a railroad crosses a highway that consent has never in fact been given.

I have said consent of the State is required. It is even more requisite here than in the ordinary case where the State is practically a trustee for the public. Here its proprietary rights are also involved. If not given, not only does the structure constitute a continuing trespass, but every person crossing the river upon it would be a trespasser.

It seems to me that unless the State has granted permission to the relator to maintain and operate a railroad over a public place the only alternative is to hold that it has granted such permission to the bridge company, and that the latter is exercising such rights through its lessee as agent. Such a holding would not accord with the facts. Some one has permission from the State. Who? I think the relator.

That its right may be terminated for non-payment of rent, that the method of its operation is controlled by

the lease, both facts seem to me immaterial.    Meanwhile it does operate a railroad over a public place by consent.

I think that the judgment of the court below was right and should be affirmed.

CARDOZO, Ch. J., POUND and KELLOGG, JJ., concur with LEHMAN, J.; CRANE and ANDREWS, JJ., dissent in opinions, in which O'BRIEN, J., concurs.

Ordered accordingly.